— A.2d —

KELLY ANN APGAR, PLAINTIFF–RESPONDENT, v. LEDERLE LABORATORIES, A DIVISION OF AMERICAN CYANAMID COMPANY, A MAINE CORPORATION DOING BUSINESS IN THE STATE OF NEW JERSEY, PFIZER, INC., A DELAWARE CORPORATION DOING BUSINESS IN THE STATE OF NEW JERSEY, AND THE UPJOHN COMPANY, A DELAWARE CORPORATION DOING BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANTS–APPELLANTS.

Argued January 14, 1991—Decided March 28, 1991.

*Susan M. Sharko* argued the cause for appellant The Upjohn Company, a Delaware corporation doing business in the State of New Jersey, (*Shanley & Fisher,* attorneys; *Susan M. Sharko* and *Benjamin H. Haftel,* on the brief).

*Douglas S. Brierley* argued the cause for appellant Pfizer, Inc., a Delaware corporation doing business in the State of New Jersey, (*Schenck, Price, Smith & King,* attorneys).

*James L. Melhuish* argued the cause for appellant Lederle Laboratories, a division of American Cyanamid Company, a Maine corporation doing business in the State of New Jersey, (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys).

*James I. Peck, IV,* argued the cause for respondent.

. PER CURIAM

Plaintiff claims that in 1963 and 1964 she ingested certain drugs manufactured and distributed by defendants, and that because those drugs were defective, they produced discoloration in her adult teeth. She started this products-liability action in 1988. After discovery, defendants moved for summary judgment based on the statute of limitations, *N.J.S.A.* 2A:14–2 and –21. Plaintiff relied on our "discovery rule," arguing that she did not know, and could not reasonably have known, that she had a cause of action against these defendants until some time within two years before she filed her complaint.

The trial court denied summary judgment for defendants, and the Appellate Division denied leave to appeal. We granted defendants' motion for leave to appeal, 121 *N.J.* 658, 583 *A.*2d 344 (1990), and now reverse.

I

Plaintiff, Kelly Ann Apgar, was born on August 19, 1961. The amended complaint filed in this cause in October 1988 alleges that between January 1963 and April 1964 she ingested certain tetracycline-based antibiotic drugs manufactured and distributed by defendants; that those drugs were defective as not being reasonably safe for their intended use by pediatric consumers, particularly in their "known potential for tooth discoloration consequent to infant ingestion"; and that defendants are liable for the ill effects, specifically the discoloration of plaintiff's adult teeth, caused by defendants' products. Her complaint is grounded on theories of strict products liability, failure to warn (first count); negligent failure to warn (second count); breach of warranty (third count); misbranding, deceptive packaging, and false labeling, all in violation of state statutory standards, federal regulations, and Food and Drug Administration requirements (fourth count); and unconscionable commercial practice, fraud, and misrepresentation, all in contravention of the New Jersey Consumer Fraud Act, for which she seeks treble damages (fifth count).

Defendants' answering pleadings raised the defense of the statute of limitations. Discovery included the deposition testimony of plaintiff, which forms a pertinent part of the record for disposition of this appeal. Because plaintiff acknowledges the accuracy of the facts set forth in the brief of defendant The Upjohn Company (Upjohn), we take the liberty of drawing liberally on Upjohn's factual presentation.

While she was still in grammar school, plaintiff noticed that her permanent teeth were discolored. In junior high school she learned from her dentist that medicine she had taken as an infant had caused the discoloration. The dentist told her that the staining could not be removed easily.

At the suggestion of a family friend, a physician, plaintiff then visited the Johnson & Johnson Dental Clinic for an evaluation. There she learned that the tooth discoloration had been

caused by medication and that the damage was permanent. Plaintiff testified on depositions that "the people at Johnson & Johnson had said that it was related to medication." When Ms. Apgar asked her mother what medications she had taken that could have caused the discoloration, her mother identified Mysteclin, a tetracycline product.

Plaintiff admitted that by the time she was graduated from high school in 1979, she thought that medication she had taken had caused the discoloration. Moreover, she testified that after her visit to the Johnson & Johnson clinic in the 1970s, she believed that the medication had not been thoroughly tested. Her assumption at that point was "something is not right."

Ms. Apgar further testified that before 1979 she believed "either the drug was tested and they knew it was a side effect and they did not tell anybody, or that it was not tested enough so that they did not know there was a side effect." She reached that conclusion based on personal experience in high school with laboratory experiments on animals that caused her to believe that "something was not done completely properly" and "that certain things weren't right." That opinion never changed or wavered over the years.

After having been graduated from Stevens Institute of Technology with a degree in mechanical engineering, plaintiff read an article in the November 7, 1985, edition of *The Star–Ledger*, about a successful litigant in a tooth-discoloration case. She first consulted the attorney for that litigant in regard to bringing an action sometime around November or December 1985, almost three years prior to the filing of this suit against Upjohn. In April 1986 plaintiff obtained from Dr. Bayard Coggleshall her treatment records, which indicated that in 1961 she had been prescribed Declomycin, a tetracycline antibiotic manufactured by defendant Lederle Laboratories (Lederle). On November 14, 1986, Dr. Edward L. Minier sent plaintiff's attorney a synopsis of his treatment of Ms. Apgar. According to Dr. Minier's records, in 1963 and in 1964 he had prescribed for

plaintiff three types of tetracycline antibiotics: Panalba, manufactured by defendant Upjohn; Achromycin V, manufactured by defendant Lederle; and Signemycin, manufactured by defendant Pfizer, Inc.

On March 22, 1988, plaintiff brought suit against defendant Lederle. On October 25, 1988, she amended the complaint to join defendants Upjohn and Pfizer as defendants. All defendants moved for summary judgment based on the statute of limitations. The trial court denied summary judgment, ruling that the statute of limitations could not start to run in a case like this "until everything is brought home to the plaintiff that she had a cause of action." Responding to the trial court's urging, defendants sought leave to appeal, which the Appellate Division denied. We granted leave to appeal.

## II

The statute of limitations for personal-injury actions is two years. *N.J.S.A.* 2A:14–2. If the injured plaintiff is under the age of twenty-one years when the cause of action accrues, the time within which suit may be commenced is extended to two years after the age of twenty-one years has been reached. *N.J.S.A.* 2A:14–21. (We are aware of some confusion in the case law over the issue of whether the Legislature intended that the twenty-one-year age set forth in *N.J.S.A.* 2A:14–21 should be deemed modified to age eighteen by virtue of *N.J. S.A.* 9:17B–1 to –3. *Compare Siebert v. Cathey,* 216 *N.J.Super.* 197, 523 *A.*2d 267 (App.Div.1987) *and Tyson v. Groze,* 172 *N.J.Super.* 314, 411 *A.*2d 1170 (App.Div.1980) (both holding that the statutory lowering of the age of majority to eighteen modified the twenty-one-years-of-age standard of *N.J.S.A.* 2A:14–21 for tolling the statute of limitations) *with McLaughlin v. Metzner,* 201 *N.J.Super.* 51, 492 *A.*2d 696 (App.Div.1985) (holding that *N.J.S.A.* 9:17B–1 to –3 did not effect such a change). We need not resolve that conflict here, because the result is the same irrespective of which interpretation is cor-

rect; moreover, we choose not to do so because all the parties have assumed, without any recognition of the conflict to which we have adverted, that the critical age is twenty-one. The issue is too significant to be addressed without the benefit of briefing and argument, and hence a decision on the point must await a case in which the question is squarely presented.)

To avoid the "harsh results that otherwise would flow from mechanical application of the statute of limitations," *Vispisiano v. Ashland Chem. Co.*, 107 *N.J.* 416, 426, 529 *A.*2d 66 (1987), this Court developed the "discovery rule," which delays "the accrual of a cause of action until the plaintiff 'learns, or reasonably should learn, the existence of that state of facts which may equate in law with a cause of action.'" *Ibid.* (quoting *Burd v. New Jersey Tel. Co.*, 76 *N.J.* 284, 291, 386 *A.*2d 1310 (1978)) (emphasis deleted).

Irrespective of whatever difficulties the "discovery rule" may have caused this Court in other contexts, see, *e.g.*, *Graves v. Church & Dwight Co.*, 115 *N.J.* 256, 558 *A.*2d 463 (1989), its application here is uncomplicated. The resolution of this appeal does not call for an in-depth review of our many "discovery rule" cases. The *Burd* test, which has been with us for more than a dozen years, is sufficient as a basis for today's decision.

In this case Ms. Apgar knew by the time she reached her twenty-first birthday that her teeth had been discolored and, based on information from several dentists, that medication she had taken as a child had produced the staining. No one gave her a contrary opinion. Her own belief was that the medicine she had ingested as a child had caused the condition. She was therefore aware of a "state of facts which may equate in law with a cause of action." *Burd, supra*, 76 *N.J.* at 291, 386 *A.*2d 1310 (emphasis deleted). On that view of the case the statute of limitations expired on August 19, 1984, two years after plaintiff's twenty-first birthday. Inasmuch as she did not start suit until March 22, 1988, her claim is time-barred. Even if plaintiff is given the benefit of the date on which she read the *Star–Ledger* article and consulted her attorney around Novem-

ber or December 1985, she still does not come within the limitations period.

Plaintiff's theory is that the statute of limitations did not begin to run on her claim until she learned the identities of the manufacturers of the drugs she had taken. She contends that because she did not discover those identities until April and November of 1986, her filing of the complaint in March 1988 was timely. That the specific identity of a potential defendant is not a requirement for commencing an action is now beyond argument. In *Viviano v. CBS, Inc.*, 101 *N.J.* 538, 503 *A.*2d 296 (1986), we made it clear that plaintiff can file a complaint naming "John Doe" defendants if the actual identity of the wrongdoer is unknown. Significantly here, the identities of defendants were readily ascertainable from plaintiff's physicians' records.

We need advert only briefly to *Smith v. Riva*, an unreported opinion of the Appellate Division on which the trial court relied. The case is readily distinguishable as being one of a special line involving the applicability of a statute-of-limitations defense when a plaintiff has been given assurances by physicians that there is no causal relationship between the medication or medical treatment at issue and the resultant injury. Our opinions in *Lynch v. Rubacky*, 85 *N.J.* 65, 424 *A.*2d 1169 (1981), and *Abboud v. Viscomi*, 111 *N.J.* 56, 543 *A.*2d 29 (1988), likewise fall into that category and have no application here. Nor need we rehash our differences expressed in *Graves v. Church & Dwight Co., supra*, 115 *N.J.* 256, 558 *A.*2d 463, arguably of the same type as the foregoing cases, it being the product of an equally-divided Court. *See, e.g., Trans World Airlines v. Hardison*, 432 *U.S.* 63, 73 n. 8, 97 *S.Ct.* 2264, 2271 n. 8, 53 *L.Ed.*2d 113, 124 n. 8 (1977); *Neil v. Biggers*, 409 *U.S.* 188, 192, 93 *S.Ct.* 375, 378, 34 *L.Ed.*2d 401, 407 (1972).

## III

We break no new ground with today's decision. Straightforward application of the "discovery rule" demonstrates that

plaintiff's cause of action accrued well in advance of two years prior to the time she filed her complaint; hence, her claim is time-barred.

Judgment reversed. The cause is remanded to the Law Division for entry of judgment in favor of defendants. No costs.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.