**AMLAND PROPERTIES CORP., Plaintiff,**

v.

**ALUMINUM COMPANY OF AMERICA, Defendant and Third–Party Plaintiff**

v.

**TRI–TERMINAL CORPORATION; Edith Maidman, as Executrix of the Estate of Irving Maidman; Donald Steinberg, as Executor of the Estate of Irving Maidman; 700 River Road Realty, Inc.; Edgewater Associates; Citibank, N.A.; Monsanto Company; Does 1 through 10, Third–Party Defendants.**

**Civ. A. No. 86–1830(MTB).**

United States District Court, D. New Jersey.

Dec. 22, 1992.

---

Allan Kanner & Associates, Philadelphia, PA, Sive, Paget & Riesel by Eric Bregman, New York City, for plaintiff Amland Properties Corp. and defendant Aluminum Co. of America.

Pitney, Hardin, Kipp & Szuch by James E. Tyrell, Jr., Morristown, NJ, for third party defendant Monsanto Co.

Rabner, Allcorn & Widmark, P.C. by Harold Rabner, S. Robert Allcorn, Upper Montclair, NJ, for third party defendants Citibank, N.A. and 700 River Road Realty, Inc.

Kaps & Barto by Raymond Barto, Hackensack, NJ, for third party defendant Edgewater Associates.

## OPINION

BARRY, District Judge.

### I.  Introduction

This case arises out of the environmental contamination of a parcel of land in Edgewater, New Jersey.  The litigation over liability for this contamination has been waged now for more than six years.  Presently under consideration is the latest round of cross-motions between Amland Properties Corp. ("Amland") and Aluminum Company of America ("Alcoa"), originally plaintiff and defendant but acting in concert since the settlement of the claims

between them in mid–1991, and third-party defendants 700 River Road Realty, Inc. and Citibank, N.A. (together "Citibank"), Edgewater Associates ("Edgewater"), and Monsanto Company ("Monsanto"). Amland has moved for leave to file what it terms a "Rule 14(a) complaint" against the third party defendants.[1] The third-party defendants oppose the Rule 14(a) motion, asserting arguments which relate largely to the timeliness of such claims. In addition, Citibank, Edgewater Associates, and Monsanto have all moved for summary judgment dismissing the extant claims of Alcoa for contribution and indemnification.

## II. Background

Amland initiated this action by filing a complaint against Alcoa on May 9, 1986 in which it sought to recover damages as a result of Alcoa's alleged contamination of its former manufacturing facility in Edgewater, New Jersey. The complaint alleged ultrahazardous and abnormally dangerous activity, negligence, gross negligence, private and public nuisance, and violations of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, relating to Alcoa's use, discharge, disposal, storage, and containment of polychlorinated biphenyls ("PCBs"). On July 21, 1986, Alcoa filed a third-party complaint seeking contribution and indemnification against those parties who had owned the property in the time between Alcoa and Amland's ownership, namely Tri–Terminal Corp., Edith Maidman, as executrix of the estate of Irving Maidman, Donald Steinberg, as executor of the estate of Irving Maidman, 700 River Road Realty, Inc., and Edgewater Associates. Alcoa sought indemnification and contribution both under common law and under CERCLA. On May 21, 1987, Alcoa filed a third-party complaint for contribution and indemnity under the same theories against Citibank, N.A., with whom 700 River Road Realty, Inc. is affiliated. On July 25, 1989, Alcoa filed a third-party complaint against Monsanto seeking contribution and indemnification. Because Monsanto was implicated as the alleged supplier of the materials containing PCBs, rather than as a former title holder to the Edgewater site, making CERCLA recovery unavailable against it, Alcoa brought only common law contribution and indemnity claims against Monsanto. Citibank, Edgewater Associates, and Monsanto have all brought counter-claims and cross-claims against Amland, Alcoa, and each other.[2]

In April, 1991, Amland and Alcoa settled the claims between them. The terms of the settlement provided for, *inter alia*, a sale of the property from Amland to Alcoa (with an option for Amland to repurchase the property within five years) and the assignment to Amland by Alcoa of its contribution and indemnity claims against the third-party defendants. The settlement was reduced to a consent order dated July 8, 1991, although the order provided to and signed by the court did not, as became evident only later, embody all the terms of the settlement between Amland and Alcoa or incorporate, by reference or otherwise, the much more complex settlement agreement entered into between Amland and Alcoa.

On December 6, 1991, the court issued an opinion from the bench in which it denied Monsanto's motion for reconsideration of the July 8, 1991 consent order, denied the motion of Amland and Alcoa for partial summary judgment and for an order that the jurisdictional predicates of the New Jersey Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A–1 *et seq.*, had been met, and granted the cross-motions for partial summary judgment of Citibank, Edgewater Associates, and Monsanto, holding that Alcoa's common law contribution claims had been extinguished. Alcoa's indemnification and CERCLA contribution claims were not before the court at that time, and the court expressed no opinion as to the viability of

---

1. The third-party defendants include not only 700 River Road Realty, Inc., Citibank, N.A., Edgewater Associates, and Monsanto Company, but also Tri–Terminal Corp., Edith Maidman, as executrix of the estate of Irving Maidman, and Donald Steinberg, as executor of the estate of Irving Maidman.

2. Apparently Citibank has not brought cross-claims against the other third-party defendants.

such claims. *See* Order dated March 2, 1992 (embodying the court's December 6, 1991 ruling from the bench).[3]

Thus, currently left in this action and, as noted earlier, now before the court are Amland's Rule 14(a) motion by which it seeks to bring claims directly against the third-party defendants for the first time and the motions of Monsanto, Citibank, and Edgewater Associates for summary judgment as to Alcoa's yet outstanding claims of CERCLA contribution and common law indemnity.

### III. Amland's Rule 14(a) Motion

In December, 1991, Amland moved for leave to file claims directly against the third-party defendants for the first time in the then five and a half years of litigation in this case, a delay of Rip Van Winkle-like proportions. In its proposed complaint, Amland seeks to bring claims against Monsanto for strict liability for the abnormally dangerous activity, defective product design, failure to warn, intentional breach of its duty to property owners, and negligence. In addition, Amland seeks to bring claims against the other third-party defendants for abnormally dangerous activity in the storage, use, disposal, and handling of PCBs, negligent maintenance and failure to clean up the Edgewater property, and CERCLA contribution and response costs.

Initially, it should be noted that the third-party defendants differ in their approach as to how the Rule 14(a) motion should be treated. Monsanto contends that leave of the court is unnecessary to file the new complaint, but that the court should deem the complaint filed and grant summary judgment as to all the new claims. Citibank and Edgewater Associates, on the other hand, argue that the strength of their positions as a matter of fact and of law is sufficient ground for the court to deny leave to file the complaint. Under either guise, the substantive arguments made, if successful, would bar the claims now asserted by Amland.

The third-party defendants oppose Amland's "Rule 14(a) complaint" on numerous grounds, including statute of limitations, laches, judicial estoppel, law of the case, preemption, and the entire controversy doctrine. The most substantial of the third-party defendants' numerous substantial objections is that Amland's proposed claims are barred by the applicable statute of limitations.

### A. Statute of Limitations

#### 1. State Law Causes of Action

Amland filed its motion for leave to file the "Rule 14(a) complaint" on December 2, 1991. There is no dispute among the parties that the calculation of the timeliness of the complaint will relate back from this date. In addition, the parties do not dispute that the common law tort claims, which include all the claims against Monsanto and all the non-CERCLA claims against the non-Monsanto third-party defendants, are subject to New Jersey's six-year statute of limitations. *See* N.J.S.A. 2A:14-1 ("Every action at law ... for any tortious injury to real or personal property ... shall be commenced within 6 years next after the cause of any such action shall have accrued."). Any cause of action now raised by Amland which accrued before December 2, 1985 would be time barred. The court's inquiry must focus, then, on when the asserted causes of action accrued. *See Aruta v. Keller*, 134 N.J.Super. 522, 527, 342 A.2d 231 (App.Div.1975) (determination of when a cause of action accrued is left to the court).

Ordinarily, the statute of limitations for an action begins to run when all the elements of the cause of action are present or, more plainly, "from the moment of the wrong." *Lopez v. Swyer*, 62 N.J. 267, 274, 300 A.2d 563 (1973). However, New Jersey recognizes the "discovery rule," an equitable rule which seeks to "avoid harsh results that otherwise would flow from mechanical application of the statute of limitations." *Vispisiano v. Ashland Chemical Co.*, 107 N.J. 416, 426, 527 A.2d 66 (1987); *see also Lopez*, 62 N.J. at

---

**3.** *See also Amland Properties Corp. v. Aluminum Co. of America*, 711 F.Supp. 784 (D.N.J.1989), which addressed issues not directly relevant to the motions pending before the court.

273–74, 300 A.2d 563. As Monsanto aptly notes, application of the discovery rule is not automatic and is not Amland's merely for the taking. Rather, it is the province of the court to take into account and balance all the equities of each case for purposes of determining whether the party invoking the rule is equitably entitled to its benefit. *Lopez*, 62 N.J. at 275, 300 A.2d 563. As the *Lopez* court recognized, the equitable nature of the rule makes this determination better suited to the judge rather than a jury.[4]

■ Taking into account the guiding factors enumerated in *Lopez*, i.e. the nature of the alleged injury, the availability of witnesses and written evidence, the length of time that has elapsed since the alleged injury, whether the delay was intentional, and whether the delay has been particularly prejudicial to the defendant, it is clear that the discovery rule should operate in this instance. Most significant in this determination is the nature of the alleged wrong. Courts have recognized that the size and complexity of environmental contamination cases, such as this case, may present difficulties with regard to statutes of limitations. *See Vispisiano v. Ashland Chemical Co.*, 107 N.J. 416, 428–29, 527 A.2d 66 (1987); *Allied Corp. v. Frola*, 730 F.Supp. 626, 632 (D.N.J.1990); *Lamb v. Global Landfill Reclaiming*, 111 N.J. 134, 150, 543 A.2d 443 (1988); *Ayers v. Jackson Township*, 106 N.J. 557, 581–82, 525 A.2d 287 (1987); *United States v. New Castle County*, 111 F.R.D. 628, 634 (D.Del.1986). None of the other factors substantially

countervails that difficulty in this case and it is clear that equity demands that Amland at least be given the opportunity to bring its newly asserted claims within the statute of limitations as expanded by the discovery rule.

The parties are in disagreement, however, as to how the discovery rule is to be applied. The rule generally provides that a cause of action does not accrue "until a plaintiff learns, or reasonably should learn, the existence of that *state of facts* which may equate in law with a cause of action." *Burd v. New Jersey Telephone Co.*, 76 N.J. 284, 291, 386 A.2d 1310 (1978) (emphasis in original). Amland argues that a cause of action does not accrue under the discovery rule until a plaintiff is aware that he or she is injured *and* that the injury is due to the fault or neglect of an identifiable defendant against whom the action can be brought. *See Abboud v. Viscomi*, 111 N.J. 56, 62–63, 543 A.2d 29 (1988). The third-party defendants, on the other hand, contend that the discovery rule does not toll the limitations period until the precise identity of the potentially responsible parties is known but, rather, contemplates that the limitations period will begin to run when the injury is known and it is or should be known that that injury is the fault of another. *See Viviano v. CBS, Inc.*, 101 N.J. 538, 546, 503 A.2d 296 (1986).

In *Allied Corp. v. Frola*, the Hon. Alfred M. Wolin considered this question and, after weighing the New Jersey case law and the competing considerations reflected

---

**4.** Amland correctly points out that the Third Circuit in *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir.1976) considered the *Lopez* discovery rule and differentiated the propriety of the judge's determinations vis-a-vis those of a jury based on precepts of federal law. While *Lopez* empowered the trial court to make the factual determination as to the "time of discovery," *see Lopez*, 62 N.J. at 275, 300 A.2d 563, *Goodman* held that the policy of the federal courts favoring jury determinations of factual issues—and the Seventh Amendment—outweighed the equitable considerations which led the Supreme Court of New Jersey to relegate the time of discovery to the judge. *Goodman*, 534 F.2d at 573.

The Third Circuit's difficulty with *Lopez* was limited to the factual determination of *when*

"discovery" was made and who must make that determination, judge or jury. This court will, as it must, follow *Goodman* in this regard. However, the issue of "when" arises only after the court has determined "if" the discovery rule should be available to a plaintiff at all. This determination, which is purely equitable in nature, is certainly appropriate for the court. *Goodman*, limited to the factual determination of "when," does not suggest otherwise. Indeed, the parties cite no cases since *Lopez*, and the court is aware of none, in which the court has entertained any analysis as to "if" the discovery rule should be equitably available to a plaintiff and the evolution of the doctrine seems to have obviated any such need. Nevertheless, in the interest of thoroughness, the court will consider this question.

therein, adopted the *Abboud* position. Judge Wolin found that the "weight of [the case law] emphasizes the importance of the identification of responsible parties" and attached substantial importance to the nature of environmental actions. *Allied,* 730 F.Supp. at 632. The third-party defendants take issue with the court's ruling in *Allied* but, more importantly, assert that even if that decision were correct under the law as it then existed, such a position has since been foreclosed by the Supreme Court of New Jersey's subsequent holding in *Apgar v. Lederle Laboratories,* 123 N.J. 450, 588 A.2d 380 (1991). In *Apgar,* the Supreme Court squarely addressed this issue:

> Plaintiff's theory is that the statute of limitations did not begin to run on her claim until she learned the identities of the manufacturers of the drugs she had taken ... That the specific identity of a potential defendant is not a requirement for commencing an action is now beyond argument. In *Viviano v. CBS, Inc.,* 101 N.J. 538, 503 A.2d 296 (1986), we made it clear that plaintiff can file a complaint naming "John Doe" defendants if the actual identity of the wrongdoer is unknown.

123 N.J. at 456, 588 A.2d 380.

It is evident that the *Apgar* court relied on *Viviano's* conclusion that an injured party who does not know the specific identity of the alleged wrongdoer is protected not by the discovery rule, but by New Jersey's allowance of fictitious party practice under Rule 4:26–4. Thus, a party who knows that he or she has been injured and knows that the injury is the fault of another, but who does not know the identity of the party potentially at fault, can avoid the harsh result the statute of limitations otherwise would impose by naming fictitious "John Doe" defendants. *Apgar,* 123 N.J. at 456, 588 A.2d 380; *Viviano,* 101 N.J. at 547, 503 A.2d 296.

■ Moreover, *Apgar* distinguished *Abboud,* as well as *Lynch v. Rubacky,* 85 N.J. 65, 424 A.2d 1169 (1981), as being in "a special line involving the applicability of a statute-of-limitations defense when a plaintiff has been given assurances by physi-

cians that there is no causal relationship between the medication or medical treatment at issue and the resultant injury." *Apgar,* 123 N.J. at 456, 588 A.2d 380. Although *Apgar* did not involve an environmental contamination action, which Amland hails as a distinguishing factor, its holding is clear and broad, leaving little room for doubt that the discovery rule does not toll the statute of limitations until the precise parties responsible for the injury are known, but only until it is or should be apparent that *some* other party is at fault.

■ Thus, in applying the discovery rule to Amland's claims, it must be determined whether Amland knew of its injury and knew that the injury was the fault of another prior to December 2, 1985. As previously noted, this court must depart from the New Jersey state practice, which indicates that the factual determination of when "discovery" took place is to be relegated to the court, to the extent required by *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976). *See supra* note 4. *Goodman,* relying on the application of the Seventh Amendment in the federal courts, held that factual disputes as to when "discovery" was had are to be resolved by a jury rather than by the judge. *Goodman,* 534 F.2d at 573.

The Third Circuit's holding in *Goodman* does not preclude this court's consideration of the factual circumstances surrounding Amland's causes of action but, rather, informs and sets the parameters for that consideration. Moreover, even where the discovery rule is applicable, a jury's involvement is not invariably required; indeed, the Third Circuit recognized after *Goodman* that the presumption favoring jury determinations of factual issues surrounding the discovery rule was not an absolute. *See Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 498 (3d Cir.1985) ("Since the applicability of the statute of limitations usually involves questions of fact for the jury, defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred.").

It is well within the province of this court to deal with issues which are potentially factual in nature. *See* Fed.R.Civ.P. 56(c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). As in other contexts, this court must defer to the fact finding function of a jury unless it can be demonstrated that there is no genuine issue of material fact as to when Amland's cause of action against the third party defendants accrued. *See Allied,* 730 F.Supp. at 632 (summary judgment on discovery rule not possible where there are genuine issues of material fact). Concomitantly, the familiar caveat that the party resisting judgment as a matter of law is entitled to all reasonable factual inferences in its favor is also applicable. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, the question before the court is whether there is any genuine issue of material fact as to whether Amland's "discovery" was after December 2, 1985.

Amland does not dispute that it knew by April, 1985 that there were PCBs on the Edgewater property. Amland's Reply Br. at 18. Moreover, the record is replete with evidence that establishes beyond any doubt that Amland knew prior to December, 1985 that there was a problem with PCBs on the Edgewater property and that it had recourse against the supplier and former property owners.[5] In April, 1985, Amland authorized Paulus, Sokolowski & Sartor ("PS & S") to conduct a contamination investigation at the Edgewater site. Citi-

bank Rule 12G Statement ¶ 16, Exh. 17; Monsanto Rule 12G Statement ¶ 22; Exh. 18. The PS & S report, which Amland received in May, 1985, stated that PS & S discovered "significant concentrations of PCBs" in samples of wood-block flooring, debris, paint chips, liquids, and surface wipes. Monsanto Rule 12G Statement, Exh. 18 at 4–2 and 10–1. Gene DelBene, the Secretary of Amland, was present at two meetings held by York/Hunter, the project manager for the development of the Edgewater site, and also attended by representatives of PS & S, on May 7 and 16, 1985 during which the presence of PCBs on the site were discussed. The minutes of these meetings, as well as the minutes of a May 23, 1985 meeting which DelBene did not attend, indicate that York/Hunter and PS & S were well aware that the PCB problem on the site was serious and that PS & S was of the belief that the contamination had come from the processes Alcoa had performed on the site and from transformer removals. Monsanto Rule 12G Statement ¶¶ 23–24, Exh. 18.

Not only was Amland well aware of the PCB contamination by the end of May, 1985, as it concedes, it also had determined by that time that it was not the responsible party and that it would look elsewhere for remuneration. The minutes of the May 16, 1985 meeting attended by Amland's DelBene indicate, for example, that American Landmark Olympia Associates' ("ALOA") counsel stated that recourse to former owners would be possible if the PCB problem was confirmed. Monsanto 12G Statement ¶ 24, Exh. 19; Citibank 12G Statement ¶ 21, Exh. 22. In addition, DelBene had discussions in May, 1985 with Anthony Sartor of PS & S in which he indicated that

---

5. The parties dispute the significance of certain events prior to 1985 with respect to Amland's knowledge of PCB contamination. The third-party defendants argue that Amland's cause of action should be deemed to have accrued in, alternatively, 1981 because Amland had concerns about chemical impregnation of the wood block flooring (Citibank Rule 12G Statement ¶¶ 9–12, Exh. 8–12; Monsanto Rule 12G Statement, ¶¶ 11–19, Exh. 8–16) or 1984 because Amland's Historic Preservation Certificate Application mentions "extensive staining from toxic

materials" and because Robert Henkel of HRF Surface Cleaning, Inc. raised concerns about the presence of heavy metals or PCBs on the site in July, 1984 (Citibank Rule 12G Statement ¶ 15, Exh. 16; Monsanto Rule 12G Statement ¶ 21, Exh. 17). These arguments and Amland's objections to them need not be fully dissected by the court, however, because the evidence relating to the events and knowledge of Amland in mid and late 1985 conclusively establish that Amland's cause of action against the third-party defendants accrued before December, 1985.

"in my mind it was not Amland that created the contamination, we would look to others in order to seek some sort of compensation for the condition that was beginning to evolve as far as a contaminated site." Citibank Rule 12G Statement ¶ 16, Exh. 17 at 351–52. The minutes, as well as handwritten notes, from a meeting of May 31, 1985 attended by representatives of York/Hunter, PS & S, Amland, and its then-counsel, Robert A. Wayne, Esq., confirm that a discussion concerning recoupment from the originator of the PCBs and the former property owners took place on that day: "ALOA counsel stated originator (ALCOA) must be notified along with subsequent owners. All should be notified in case future law suit is eminent [sic] and because subsequent owners may have contributed to contamination." Citibank Rule 12G Statement ¶¶ 22–23, Exh. 23–24; Monsanto Rule 12G Statement ¶ 28, Exh. 21.[6]

In June, 1985, Amland notified the New Jersey Department of Environmental Protection ("NJDEP"), the United States Environmental Protection Agency ("EPA"), the Borough of Edgewater, and Alcoa of the existence of PCBs at the site and the likelihood that the PCBs came from Alcoa's use of the property. Monsanto Rule 12G Statement ¶¶ 29–31, Exh. 23. An October 22, 1985 draft of an Administrative Consent Order ("ACO") between Amland and the NJDEP indicates that Amland knew the identity of the title holders to the property subsequent to Alcoa. Citibank Rule 12G Statement ¶ 24, Exh. 25 ¶ 3. That draft of the ACO also contained an express reservation of the right of Amland to take action against the PCB manufacturers. Monsanto Rule 12G Statement ¶ 34; Exh. 28.

Amland does not dispute the accuracy of these facts and, indeed, they are all well documented in the record; rather, it takes issue with the inferences to be drawn from and the import of these facts. It contends that these facts do not constitute "a state of facts which may equate in law with a

cause of action" because there was no evidence in December, 1985 that the supplier of PCBs, Monsanto, or the interim owners of the property, Citibank and Edgewater Associates, were at fault. *Burd,* 76 N.J. at 291, 386 A.2d 1310. Thus, Amland argues, its cause of action against each third-party defendant should not be deemed to have accrued until it uncovered specific evidence of wrongdoing by that party.

Amland's view of the facts and, more importantly, the law is skewed. The facts indicate clearly that prior to December, 1985 it knew that there was PCB contamination, that the contamination had most likely occurred during Alcoa's use of the property for manufacturing, specifically from the use of transformers which used hydraulic fluids, that there were interim owners between Alcoa and itself, and that the property had been kept in a substantially dilapidated condition. The fact that Amland lacked "smoking gun" evidence irrefutably tying the third-party defendants to contamination of the site in December, 1985 does not prevent the cause of action against them from accruing. As the Supreme Court of New Jersey noted in looking back on its decision in *Viviano,* the cause of action of Mrs. Viviano, whose hand was crushed in a record press, accrued when she knew that a defect in the pressing machine had caused her injury, "though she may not have been exactly certain of which part of the machine." *Graves v. Church & Dwight Co.,* 115 N.J. 256, 266, 558 A.2d 463 (1989) (citing *Viviano,* 101 N.J. 538, 503 A.2d 296 (1986)). Applying the discovery rule in this case, it was evident prior December, 1985 that the contamination was "(a) the fault of (b) a third party." *Vispisiano,* 107 N.J. at 434, 527 A.2d 66. The undisputed evidence establishes that Amland's cause of action accrued before December, 1985 but that with knowledge of that cause of action it sat on its haunches and waited for over six years to bring direct claims against the third-

---

6. Monsanto notes that the minutes of the May 31, 1985 meeting and a subsequent memorandum from William J. Berk of PS & S to York/Hunter mention "Aroclor," a Monsanto trade name, as another name for PCBs. Monsanto contends that this demonstrates that Amland should have known that Monsanto was a leading supplier of PCBs and was the likely supplier of the contaminating fluids to Alcoa.

party defendants. Such conduct cannot and will not be legitimized by the equitable operation of the discovery rule.

## 2. CERCLA Claims

In addition to common law causes of action, Amland seeks to recover from the previous owner third-party defendants under CERCLA. This court held, in its opinion of April 18, 1989, that Amland's recovery under CERCLA must be limited to the costs incurred in its removal actions, *see* 42 U.S.C. § 9601(25), because its remedial actions, *see* 42 U.S.C. § 9601(23), were not in compliance with the National Contingency Plan ("NCP"). *See Amland Properties Corp. v. Aluminum Co. of America,* 711 F.Supp. at 801. The statute of limitations for suits to recover for such removal actions is three years from the time such efforts were completed. *See* 42 U.S.C. § 9613(g)(2)(A). The evidence is clear, and Amland does not dispute, that the removal phase at the Edgewater site concluded long before December 2, 1988, three years prior to Amland's first assertion of CERCLA claims against the prior owner third-party defendants. Therefore, it is similarly clear that Amland's CERCLA claims against the third-party defendants are time barred.

## B. *Relation Back*

■ Despite the gross delay in asserting its claims against the third-party defendants, Amland attempts to sidestep its timeliness problems by arguing that these claims should relate back to the filing of its original complaint under Fed.R.Civ.P. 14(a) and 15(c). The relation back of a complaint adding or changing a party in federal court is governed by Rule 15(c). Rule 15(c), as amended effective December 1, 1991, provides that relation back be governed by the more liberal of the federal law or the state law applicable in the action. While Amland cites to several New Jersey cases in which the courts have permitted the filing of an amended complaint naming a third-party defendant for the first time outside the limitations period under the doctrine of relation back,[7] its argument is fatally flawed for one very basic reason.

As the court noted at the December 6, 1991 hearing, Amland simply has no complaint to amend. It settled its claims against Alcoa, the only claims it had brought as plaintiff in more than six years, in April, 1991 and had the terms of the settlement reduced to a consent order in July, 1991. From that point forward, Amland ceased to be a plaintiff in this action. It cannot now, having "heard what it may well have believed was the death rattle," seek to rejoin the fray which it deliberately exited because its alternative sources of recovery were not what it thought. Transcript of December 6, 1991 Hearing, Citibank Rule 12G Statement, Exh. 42, at 3. To the extent that permitting the filing of an amended complaint incorporating Amland's newly asserted claims is subject to the discretion of the court, the court absolutely and resolutely declines to exercise its discretion so to do. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (leave to amend a complaint under Rule 15(a) should be freely granted in the absence of undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party).[8]

---

**7.** *See Lawlor v. Cloverleaf Memorial Park,* 56 N.J. 326, 266 A.2d 569 (1970); *Greco v. Valley Fair Enterprises,* 105 N.J.Super. 582, 253 A.2d 814 (App.Div.1969); *De Sisto v. City of Linden,* 80 N.J.Super. 398, 193 A.2d 870 (Law Div.1963).

**8.** The third-party defendants also argue, *inter alia,* that Amland should be prevented from bringing claims against them by virtue of the doctrines of judicial estoppel and laches. While the court expresses no opinion as to whether Amland's past representations are sufficient to amount to judicial estoppel, it is worthwhile to note that had its direct claims against third-party defendants not been dismissed on statute

of limitations grounds, they may well have been barred under the doctrine of laches. In considering whether claims should be barred by laches, the court should look to the delay in bringing an action, the reasons for the delay, and changes in the conditions and relationships occasioned by the delay. *See Lavin v. Hackensack Board of Education,* 90 N.J. 145, 152, 447 A.2d 516 (1982); *Student Public Interest Research Group of New Jersey, Inc. v. Monsanto Co.,* 600 F.Supp. 1474, 1477 (D.N.J.1985). Even crediting Amland's purported reasons for delay, they do not warrant the excessive and intentional delay exhibited here. Moreover, the simple "realignment" of the parties Amland seeks could

## IV. Summary Judgment as to Alcoa's Claims

By the terms of the Amland–Alcoa settlement of April, 1991, Alcoa assigned to Amland

all rights, claims, causes of action or entitlements for damages or costs in contribution or indemnification Alcoa now has or will have, from or as a result of the Third–Party claims filed by Alcoa against the Third–Party Defendants in the Action and all rights, claims, causes of action or entitlements for damages or costs which Alcoa may now or hereafter have against the Third–Party Defendants as owner of the Property....

Exh. 12 to Settlement Agreement, Affidavit of Oskar Brecher, dated September 11, 1991, Exh. A. Thus, since the Amland–Alcoa settlement, the contribution and indemnification claims of Alcoa have been Amland's to prosecute. In its December 6, 1991 ruling, the court held that, under any one of several theories, the common law contribution claims assigned by Alcoa to Amland were not viable. *See* Transcript of December 6, 1991 Hearing at 16–18, Citibank Rule 12G Statement, Exh. 42. Not before the court at that time, however, were the indemnification and CERCLA contribution claims brought initially by Alcoa against the third-party defendants and later assigned per the settlement agreement by Alcoa to Amland. The third-party defendants now move for summary judgment on these claims. Specifically at issue are Alcoa's claims for indemnification against all third-party defendants and its CERCLA contribution claim against the former owner third-party defendants.

### A. *Alcoa's Indemnification Claims*

Amland and Alcoa do not address the indemnification claims in their brief except to say that "[w]ithout conceding the merits

of Alcoa's indemnification claim which has been assigned to Amland, Amland has withdrawn its claim for indemnification." Reply Br. of Amland and Alcoa at 48 n. 14. Of course, faced with a properly supported motion for summary judgment, Amland and Alcoa cannot simply respond by withdrawing its indemnification claims in an attempt to preserve the merits of those claims for another day or another forum. Rather, their failure to oppose the summary judgment motion on this issue warrants that the motion be granted as unopposed on the merits. *See* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Sound Ship Building Corp. v. Bethlehem Steel Co.*, 533 F.2d 96, 100 (3d Cir.1976).

Even were Amland and Alcoa to have opposed the motion for summary judgment as to the indemnification claims on the merits, it is clear that, for the reasons previously articulated by the court in its December 6, 1991 opinion, summary judgment would be granted in favor of the third-party defendants. Indeed, it appears that Amland's decision not to pursue these claims may have been due to what it recognized to be a foregone conclusion. *See* Amland's Reply Br. dated January 28, 1992, Citibank Rule 12G Statement, Exh. 41 at 1 n. 1 ("Amland and Alcoa continue to believe that the assignment [of Alcoa's indemnification claims to Amland] was valid,

---

well render inadequate or inappropriate the massive discovery efforts undertaken by the third-party defendants. The years of discovery and litigation strategy reasonably premised on the assumption that Amland sought recovery only from Alcoa would be rendered if not useless, inadequate, to defend against Amland's purported claims. This is particularly so in light of the alliance forged between Amland and

its former foe (and, by virtue of its status as third-party plaintiff, the party in direct opposition to the third-party defendants), Alcoa. Under these circumstances, even were the court to determine that Amland's claims were brought within the statute of limitations, the claims would be in grave equitable peril under the doctrine of laches.

but its validity is governed by the same law as to which the court reached a contrary conclusion in its December 6, 1991 ruling."). One of the bases for the court's ruling that the common law contribution claims were not viable was that under New Jersey law, tort claims cannot be assigned prior to judgment. *See* Transcript of December 6, 1991 Hearing at 16–18, Citibank Rule 12G Statement, Exh. 42 (citing *East Orange Lumber Co. v. Feigenspan*, 120 N.J.L. 410, 199 A. 778 (1938); *United States Casualty Co. v. Hyrne*, 117 N.J.L. 547, 189 A. 645 (1937); *DiTolvo v. DiTolvo*, 131 N.J.Super. 72, 328 A.2d 625 (App.Div. 1974); *Costanzo v. Costanzo*, 248 N.J.Super. 116, 590 A.2d 268 (Law Div.1991)). Thus, to the extent that Alcoa ever had valid indemnification claims against any of the third-party defendants, it could not assign such claims. Without an unnecessary exegesis, it is evident that the principles of New Jersey law previously relied on by the court require dismissal of Alcoa's indemnification claims with prejudice.

B. *Alcoa's CERCLA Contribution Claims*

■■■ Citibank and Edgewater Associates have moved for summary judgment on Alcoa's CERCLA contribution claims against them, claims brought under CERCLA section 113(f)(1), 42 U.S.C. § 9613(f)(1).[9] In support of the motion, they assert two theories. First, they argue, Alcoa's contribution claim should fail because the Amland–Alcoa settlement failed to "buy peace" for the third-party defendants. Although there is no such explicit requirement in the CERCLA contribution provision, Citibank and Edgewater Associates contend that the court should interpret CERCLA contribution consistently with the Restatement (Second) of Torts and the Uniform Contribution Among Joint Tortfeasors Act, each of which makes extinguishing all outstanding claims against all defendants a prerequisite to contribution. Second, they argue that the amount paid by Alcoa to Amland under the Settlement Agreement cannot be determined and that, therefore, there is no way to make an equitable apportionment of liability among the parties. Amland and Alcoa parry that the language, legislative history, and policy of CERCLA do not support the interpretation advocated by the third-party defendants and that CERCLA contribution is proper in

**9.** Section 9613(f), entitled "Contribution," contains provisions relating to the litigation of contribution claims in both private party actions and actions brought by the federal or state government. In its entirety, section 9613(f) provides

(1) Contribution
Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 or section 9607 of this title.
(2) Settlement
A person who has resolved liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.
(3) Persons not party to settlement
(A) If the United States or a State has obtained less than complete relief from a person who has resolved its liability to the United States or the State in an administrative or judicially approved settlement, the United States or the State may bring an action against any person who has not so resolved its liability.
(B) A person who has resolved its liability to the United States or a State for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).
(C) In any action under this paragraph, the rights of any person who has resolved its liability to the United States or a State shall be subordinate to the rights of the United States or the State. Any contribution action brought under this paragraph shall be governed by Federal law.
42 U.S.C. § 9613(f).

this circumstance and must be determined by a jury.

The question at bar, i.e. the nature of the CERCLA contribution rights of a defendant who has settled a private party action and seeks contribution from non-settling third-party defendants, appears to be a novel one and, by all accounts, one of first impression in the federal courts. It is axiomatic that the beginning point for statutory construction is the language of the statute itself. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *see also Watt v. Alaska*, 451 U.S. 259, 265–66, 101 S.Ct. 1673, 1677–1678, 68 L.Ed.2d 80 (1981). As provided by the Superfund Amendment and Reauthorization Act of 1986, CERCLA section 113(f)(1) establishes a general right of contribution of any person who is liable or potentially liable under section 107(a). The section dictates that such claims are governed by federal law and that "[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Significantly, the section does not limit itself to actions brought by the United States or any State and must be deemed, therefore, to apply to both actions brought by the government—federal or state—as well as private party actions. In contrast, section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B), which applies only to persons who have resolved their liability to the United States or a State in an administrative or judicially approved settlement, specifically permits such persons to seek contribution from persons not party to the settlement *"for some or all of a response action or for some or all of the costs of such action."* 42 U.S.C. § 9613(f)(3)(B)(emphasis added). Thus, were this action one brought by the United States or by a State, it is clear that the viability of Alcoa's right to contribution would not depend on whether it had extinguished all claims against other defendants.

Although the statutory language is clear and unambiguous, the statute's failure to directly address the parameters of a settling party's right to contribution could be seen as leaving room for debate. While Congress' silence can in some instances be interpreted as equivocation to beget argument, the congressional silence in this case is deafening. Congress indicated its awareness and willingness to address the contribution rights of a settling party in section 113(f)(3)(B), where it explicitly reserved the right to seek contribution for parties settling with the United States or a State, regardless of whether the settlement pertained to all or only some of the costs of a response action. In contrast, Congress created a general right of contribution in private party actions but declined to include a provision which would secure that right for settlements of less than the entire action. This is particularly important in light of the fact that the great weight of common law and statutory authority prior to the Superfund amendments adhered to the requirement that a settling party must have at least extinguished the plaintiff's claims against the party from whom contribution is sought. *See, e.g.,* Restatement (Second) of Torts § 886A(2) ("The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability ..."); Uniform Contribution Among Tortfeasors Act § 1(d), 12 U.L.A. 63 (1975) ("A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable."); Uniform Comparative Fault Act § 4(b), 12 U.L.A. 53 (Supp.1992) ("Contribution is available to a person who enters a settlement with a claimant only (1) if the liability of the person against whom contribution is sought has been extinguished and (2) to the extent that the amount paid in settlement was reasonable."). The clear implication to be drawn is that Congress did not intend to alter these clear and ring-

ing principles of contribution in actions between private parties.

In their respective attempts to persuade the court on this point, the parties on both sides of the issue point to *Lyncott Corp. v. Chemical Waste Management, Inc.*, 690 F.Supp. 1409, 1417–19 (E.D.Pa.1988). The court in *Lyncott* held that a settling party in a private party CERCLA action was protected from nonsettling parties' actions for contribution. On one hand, Amland and Alcoa point to the court's invocation of CERCLA's policy of encouraging settlements and its willingness to extend the statutory protection against contribution afforded to persons settling with the government—federal or state—under CERCLA section 113(f)(2), 42 U.S.C. § 9613(f)(2), to persons settling in private party actions. On the other hand, the third-party defendants note that the court sought guidance from model acts and the Restatement where CERCLA was silent on contribution as between private parties, looking primarily to the Uniform Comparative Fault Act, finding that Act most consistent with CERCLA. Indeed, the third-party defendants cite a litany of cases in which courts have looked not only to the Uniform Comparative Fault Act, but also to the Restatement (Second) of Torts § 886A and the Uniform Contribution Among Tortfeasors Act, all of which dictate that no right of contribution exists for a settling joint tortfeasor unless the settlement extinguishes the liability of the party from whom contribution is sought.

*Lyncott* is distinguishable in several important respects. First, and most obvious, the question at bar in *Lyncott*, i.e. whether a settling party is protected against contribution, is different from the question here, i.e. whether and under what circumstances a settling party may itself seek contribution. Second, while the Restatement, the Uniform Contribution Among Tortfeasors Act, and the Uniform Comparative Fault Act all differed somewhat in their provisions regarding the contribution protection question presented in *Lyncott*, the uniform acts and Restatement are all in accord with respect to the requirement that a settling party must have bought the peace of a party from whom it seeks contribution. Thus, where the *Lyncott* court was left to choose among these statutory guideposts, this court is faced with a choice of whether to follow the model acts or disavow them in favor of Amland and Alcoa's speculative arguments regarding congressional intent. Finally, *Lyncott*'s emphasis on encouraging settlements and finality in CERCLA litigation is not lost on this court. Although a party able to seek contribution from other parties without extinguishing other potential claims against them may be more likely to settle, such settlements do not add finality to already complex CERCLA actions. Rather, if this case is any indication of the evils of such a rule, such settlements could spawn even more litigation, as parties scramble to redistribute liability in any number of directions perhaps in response to adverse rulings. Thus, even apart from the telling congressional silence on this point, the more general policy considerations behind CERCLA mandate adoption of the common law rule that a settling party must have extinguished the liability of a party before seeking contribution from that party. Because Alcoa has not done this, its CERCLA contribution claims against Citibank and Edgewater are barred.

## V. Conclusion

To summarize the court's holdings, Amland's motion for leave to file a Rule 14(a) complaint bringing direct claims against the third-party defendants is denied, inasmuch as such claims are time barred as a matter of law.[10] In addition, the motions of Monsanto, Citibank, and Edgewater As-

---

**10.** Citibank requests that for a variety of reasons, including the fact that the statute of limitations has run, a declaratory judgment be entered holding that Amland is precluded from bringing direct claims against the third-party defendants in any court. Given the fact that this court has found, as a matter of law, that such claims are time barred, it need not also enter a declaration to that effect or decide issues unnecessary to decide given this disposition, i.e. laches, judicial estoppel, the entire controversy doctrine, federal preemption, and law of the case.

sociates for summary judgment on Alcoa's common law indemnification and CERCLA contribution claims are granted. Counsel for Citibank, Edgewater Associates, and Monsanto are to agree upon an order reflecting this decision and submit same to the court within fourteen days of this date. Upon the filing of that order, the parties are directed to schedule a conference with Magistrate Judge Chesler for purposes of resolving who and what—if anybody or anything—is left of this matter.