188 N.J. Super. 638 (1983)
458 A.2d 156
FRANK J. JARUSEWICZ AND MARY JARUSEWICZ, HIS WIFE, ET AL., PLAINTIFFS,
v.
JOHNS-MANVILLE PRODUCTS CORP., ET AL., DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
JERSEY CENTRAL POWER & LIGHT CO., THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division Middlesex County.
Decided February 18, 1983.
*639 Alan M. Darnell for plaintiffs (Wilentz, Goldman & Spitzer, attorneys).
Philip V. Lago for defendant GAF (Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, attorneys).
Steven A. Weiner for defendant Johns-Manville (Budd, Larner, Kent, Gross, Picillo & Rosenbaum, attorneys).
*640 William R. Connelly for defendant Quigley Co. (Ravin, Davis & Sweet, attorneys).
Stephen J. Foley for defendant Porter-Hayden (Campbell, Foley, Lee, Murphy & Cernigliaro, attorneys).
James F. Hyland for defendant Pittsburgh Corning (Evans, Koelzer Marriott, Osborne & Kreizman, attorneys, and Henry R. Simon, attorney).
Peter W. Sachs for defendants A.P. Green Refractories and Metropolitan Refractories (Sachs and Sachs, attorneys).
Peter A. Piro for defendant Combustion Engineering (Haskins, Hack, Piro and O'Day, attorneys).
H. Frank Carpentier for defendant Flintkote Mines (Carton, Nary, Witt & Arvanitis, attorneys).
Brian J. Coyle for defendant Owens-Corning Fiberglas (Harwood, Lloyd, Ryan, Coyle & McBride, attorneys).
Linda P. Torres for defendant Keene Corp. (Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan, attorneys).
Gita F. Rothschild for defendant Owens-Illinois (McCarter & English, attorneys).
Thomas F. Tansey for defendant Nicolet (Morley, Cramer, Tansey, Haggerty & Fanning, attorneys).
George P. Moser, Jr. for defendant Armstrong World Industries (Moser, Roveto, McGough & vonSchaumburg, attorneys).
Steven E. Brawer for defendant Babcock & Wilcox (Rosenberg & Brawer, attorneys and Richard A. DeMichele, attorney).
Brian P. Sullivan for defendant Atlas Turner (Smith, Stratton, Wise & Heher, attorneys).
Barbara A. Schwab for defendant Philip Carey (Lamb, Chappell, Hartung, Gallipoli & Coughlin, attorneys).
Michael P. McGrath for defendant State Insulation (Enright, Porter & Lenney, attorneys).
*641 KEEFE, J.S.C.
The issues to be decided on this motion are: whether plaintiffs' amended complaint joining 16 additional defendants in this case violates the statute of limitations and, if so, whether plaintiffs correctly used the fictitious name practice permitted by R. 4:26-4 thereby avoiding application of the statute. For the reasons stated herein both questions are answered in the affirmative.
The 18 plaintiffs in this matter filed a complaint on September 19, 1980, alleging injuries resulting from exposure to asbestos products. Defendants named in that complaint were: "Johns-Manville Products Corporation; A.P. Green Refractories Co.; Metropolitan Refractories, Division of A.P. Green Refractories Co.; Quigley Co., subsidiary of Pfizer, Inc.; J.H. France Refractories Corp.; Eagle-Picher Industries, Inc.; Porter Hayden Co.; Madsen & Howell, Inc.; State Insulation Corp.; Insulation Materials Corp.; E & B Mill Supply Co.; Elizabeth Industrial, Division of Charles F. Guyon, Inc.; and John Does." (Emphasis supplied). In the first count of the complaint plaintiffs state that they were employed at Jersey Central Power & Light over a period of time from 1930 to the present, during which they "were required to and did work with asbestos, asbestos products and/or materials." Thereafter, and throughout the complaint plaintiffs alleged that defendants were "manufacturers, suppliers and/or distributors of the asbestos, asbestos products and/or materials" that they used in the course of their work. Plaintiffs' theory of recovery was expressed in terms of negligence, warranty, strict liability in tort and intentional misrepresentation of fact.
A third-party complaint was filed with leave of court by Johns-Manville on July 20, 1981. The third-party defendants named in that complaint were: Babcock & Wilcox; Forty Eight Insulation Co.; Combustion Engineering; Owens Corning Fiberglas Corp.; Owens Illinois Corp.; Celotex Corp., successor to Philip Carey Corp.; Atlas Turner Corp., successor to Atlas *642 Asbestos Co.; Southern Asbestos Corp.; Unarco Industries; Pittsburg Corning Corp.; Armstrong Cork & Seal Corp.; GAF Corp., successor in interest to Ruberoid; Nicolet Industries; Keene Corp., successor to Keene Building Products Corp.; Fiberboard Corp., and Garlock Corp. According to the certification of Johns-Manville's counsel filed in connection with the motion, the prospective third-party defendants were identified by various plaintiffs during the course of depositions which commenced about April 1981 and concluded shortly before the motion was made.
Plaintiffs' work histories at JCP & L spanned many years and in some cases several decades. Consequently, they testified that they could remember only some of the names of the products to which they were exposed. The identity of the third-party defendants was developed by the Johns-Manville attorney who used a "black book" containing photographs and product literature of various asbestos suppliers and manufacturers. Plaintiffs' recollections were "refreshed" as to product use and exposure when they were shown this literature for the first time.
By order dated August 12, 1981 plaintiffs were permitted to amend their complaint to add the 16 third-party defendants as direct defendants. The amended complaint was not filed until October 29, 1981.
Defendant GAF moved for summary judgment, contending that the plaintiffs' suit against it was barred by the statute of limitations. The remaining newly named defendants soon joined in the motion.
Interrogatories propounded by defendant Johns-Manville in the case asked each plaintiff to state the exact date upon which plaintiff became aware that his medical symptoms were caused by the alleged acts of Johns-Manville. In response to this question the earliest date given by any of the plaintiffs was September 21, 1978, and the latest date given was March 21, 1979. (Plaintiff Warren Rappleyea died on April 23, 1979. That date is, of course, critical with reference to the claim made for his wrongful death. N.J.S.A. 2A:31-1 et seq.)
*643 In view of these facts the moving defendants argued that since they were not joined as third-party defendants within two years of March 21, 1979 as to the personal injury claims, or two years of April 23, 1979 as to the death claim, the claims are time-barred. McGlone v. Corbi, 59 N.J. 86 (1971). They further argued that plaintiffs' cause of action was not saved by the use of "John Does" in the caption of the complaint since the requirements of R. 4:26-4 were not followed.
In reply plaintiffs argued that the cause of action does not accrue as to personal injury claims until the identity of the defendant is made known to plaintiffs, or, in the alternative, that their cause of action was saved by the use of the "John Does" procedure. With respect to the latter issue plaintiffs' argument is succinctly stated in one of their several briefs as follows: "Although a more artful pleading would have specifically labeled the John Doe defendants as fictitious names of manufacturers, suppliers, distributors, etc., of asbestos and/or asbestos products, there can be no doubt that the Complaint, taken as a whole, sets forth the substance of a cause of action against the John Doe defendants."
Plaintiffs' attempt to use the "discovery rule" as a basis for a determination that their cause of action as to any particular defendant does not accrue until that defendant's identity is known has not been decided in this State. The discovery doctrine provides that "in an appropriate case a cause of action will be held not to accrue until the injured party discovers or by an exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim." Lopez v. Sawyer, 62 N.J. 267, 272 (1973). Knowledge of the existence of injury does not always trigger the accrual of the cause of action. At times the inquiry must focus upon fault as well as injury where the awareness of the fault is not self-evident in the injury. Lynch v. Rubacky, 85 N.J. 65, 72-73 (1981). Therefore, in the case under consideration it would not seem appropriate to trigger the accrual of the action until plaintiffs *644 were made aware that their pulmonary symptoms were caused by asbestos exposure. At that point in time there would be a nexus between injury and fault. Plaintiffs seek to extend the rule laid down in Lynch v. Rubacky, supra, by requiring an identification of the tortfeasor to be a part of the fault consideration. If plaintiffs' argument is adopted there would be differing accrual times in the same case where multiple tortfeasors are involved depending upon when a plaintiff learned of a particular tortfeasor's identity. No authority can be found in the case law of this State to support such a proposition. Authority to the contrary, however, is found in the concurring opinion of Justice Pashman in the case of Lawrence v. Bauer, 78 N.J. 371 (1979), in which he said:
The rule has never been applied in situations such as the present where plaintiffs know that they possess actionable claims but are ignorant of the precise identity of the person responsible for their injuries. One reason for this non-applicability is that such a plaintiff can prevent the limitations period from running by complying with R. 4:26-4 . .. The very purpose of this rule is to suspend the running of the statute of limitations until the actual identity of a defendant is discovered. [at 375]
The majority opinion in Lawrence v. Bauer was a per curiam adoption of the dissenting opinion of Judge Ard in the Appellate Division. In that opinion Judge Ard said:
It should be emphasized that this is not a case where plaintiffs did not know of their injury before being barred by the statute. Rather, they did not know who did it, and accordingly had a remedy provided by the New Jersey Rules of Court, R. 4:26-4.... [154 N.J. Super. 271 (App.Div. 1977), at 280]
Therefore, under the facts and law of this case, plaintiffs' claim against the movants is time-barred unless saved by the utilization of the procedure provided by R. 4:26-4. The rule in question in pertinent part states
In any action, ... if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient to identify him.
Plaintiffs concede that their complaint was not an "artful" pleading. They agree that an acceptable pleading would have stated that the "John Does" defendants represented "fictitious names of manufacturers, suppliers, distributors, etc., of asbestos and/or asbestos products." However, plaintiffs argue that the *645 complaint, "taken as a whole," satisfied the substantive requirements of the rule. In this respect they cite R. 4:5-7, which states:
Each allegation of a pleading shall be simple, concise and direct, and no technical forms of pleadings are required. All pleadings shall be liberally construed in the interest of justice.
Fictitious name practice was permitted in this jurisdiction as early as 1891 when the procedure was codified in statutory form. L. 1891, c. 253, at 477-478. Various recodifications took place up to the 1947 Constitution when the practice became a matter for court rule. A review of the various statutes indicates that the wording remained essentially the same over the years. L. 1898, c. 228, par. 42 at 566; L. 1903, c. 247, par. 43 at 546; R.S. 2:27-42; R.S. 2:32-13. In Karandontes v. Ferrell, 7 N.J. Misc. 807 (D.Ct. 1929), the only case found that interpreted the statutory procedure, the court held:
The legislature intended that the `description identifying or tending to identify such defendant' should serve the quite obvious purpose of identifying the defendant so that any reasonably intelligent person might know who was intended. [at 808]
Thus, it would appear that under early practice in this State the intention of the pleader as evidenced from a reading of the entire pleading was the test used to determine whether the fictitious name practice had been properly utilized. No technical form of pleading was required.
Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111 (1973), was the first case to address the fictitious name practice post 1947. In that case Justice Jacobs, writing for the court, said (at 119): "The liberalizing rules which the Supreme Court adopted contained nothing to suggest any purpose to narrow earlier practices with respect to fictitiously named defendants." Therefore, the rule stated in Karandontes v. Farrell, supra, is still viable.
The next case to address the use of fictitious name practice was Miletta v. Doe, 158 N.J. Super. 550 (Law Div. 1978). In that case the issue presented was whether plaintiff utilized the procedure permitted by R. 4:26-4 in her first and second amended *646 complaints. It is necessary to recite the facts of that case to understand the implication of the court's holding in the context of the matter now under consideration.
On August 1, 1974 plaintiff's decedent died, allegedly as a result of exposure to asbestos. On July 23, 1976 plaintiff filed a complaint naming as defendants "John Doe (a fictitious name representing one or more corporations and/or companies engaged in the business of manufacturing and/or distributing products containing asbestos)." On February 7, 1977 plaintiff filed the first amended complaint naming Brunswick Fabricators Inc. and four other defendants. The John Doe designation was not included in this pleading. On July 8, 1977 a second amended complaint was filed, and again there was no reference to a John Doe party in the pleading. On August 11, 1977 defendant Brunswick Fabricators filed a third-party complaint against Atlas Asbestos and Nicolet. Plaintiff filed a third amended complaint naming Atlas and Nicolet as direct defendants on November 22, 1977.
The court held that the amendment would relate back to the date on which the original complaint was filed only if Atlas and Nicolet were impleaded as third-party defendants within two years of the date of death (which was clearly not the case), or if the procedure permitted by R. 4:26-4 was followed. As to the use of the fictitious name procedure the court said: "Although plaintiff's original complaint named as defendant `John Doe' who was described with sufficiency, plaintiff's first and second amended complaints omitted any reference to `John Doe', substituting specifically named defendants for this fictitious name. Not until November of 1977 did plaintiff attempt to revive `John Doe' by naming him as defendant in her third amended complaint." Id. at 555. In other words, plaintiff's efforts to join Atlas and Nicolet as direct defendants failed because plaintiff did not express in her pleadings subsequent to the original complaint an intention to sue unknown suppliers and manufacturers of asbestos.
*647 The most recent case dealing with R. 4:26-4 is Lawrence v. Bauer Publishing & Printing Ltd., 78 N.J. 371 (1979). In that case the allegedly libelous article which formed the basis of plaintiff's suit was printed in the January 9, 1975 issue of defendant's newspaper. Defendant Hartnett was not joined as a party to the action until May 11, 1976. Since a one-year statute of limitations is applicable to such actions, plaintiff's claim for damages was time-barred. As indicated earlier in this present opinion, the court acknowledged that the fictitious name practice permitted by R. 4:26-4 was created for the purpose of suspending the running of the statute of limitations until the actual identity of defendant is discovered. However, plaintiff's use of the "John Doe" complaint was limited to its description of the "composer and writer" of the allegedly libelous article. There was no evidence in the pleading that the plaintiff intended the "John Doe" designation to apply to the "source" of the article as well.
This court concludes that a reading of the subject complaint on the whole leads reasonably to the conclusion that: (1) plaintiffs intended to invoke the use of the fictitious name practice against multiple unknown parties by using the designation "John Does" in the caption of the complaint. The use of the name "John Doe" in a pleading has been commonly accepted as an appropriate designation of a fictitious party. Likewise, there is no need for an endless designation of fictitious names where the pleader has no idea of the number of unknown parties who may have supplied asbestos to an employer over a span of two or three decades. The use of the plural "John Does" is sufficient. Indeed, movant GAF admits in its brief that it understood that plaintiffs had attempted to invoke the fictitious name practice  "The present plaintiffs were clearly aware of R. 4:26-4 inasmuch as the captions of the complaint and amended complaint listed `John Does' as defendants." (2) The "John Does" designated in the caption are adequately described in the body of the complaint as all "manufacturers, suppliers and/or distributors of the asbestos, asbestos products and/or materials" *648 that plaintiffs used in the course of their employment at Jersey Central Power & Light between the years 1930 to the present time. No more definitive description was necessary or possible until the exact identity was determined during the course of depositions when various plaintiffs' memories were refreshed by the use of Johns-Manville's "black book." The pleading is clearly intended to apply to all "defendants" and judgment is sought against all "defendants."
Finally, movants argue that plaintiffs did not exercise "due diligence" in proceeding against them. They argue that the identity of some of the moving parties was known as early as April 1981 when the first series of depositions were taken in this case. However, it is clear that the depositions of all the plaintiffs were not completed until sometime in July 1981. It would seem logical for plaintiffs to wait until all product identification was completed to bring their motion to amend in order to simplify procedure. Three months is not an inordinate delay in time, and in any event movants can point to no particular prejudice caused by the delay itself. The lapse of time between plaintiffs' earliest exposure to asbestos and the date of manifestation of any asbestos-related diseases poses some problems for all defendants in terms of reconstructing the nature and amount of sales of such products to plaintiffs' employer. The passage of time naturally dulls some memories and results in the loss or destruction of records. That problem, however, is not related to the use of the fictitious name practice, but, rather, is proof of the need for it. There is certainly no suggestion that plaintiffs have been benefited by the delay. As stated by the Supreme Court in Farrell v. Votator Div. of Chemetron Corp., supra:
Justice impels strongly towards affording the plaintiffs their day in court on the merits of their claim; and the absence of prejudice, reliance or unjustifiable delay, strengthens the conclusion that this may fairly be done in the matter at hand `without any undue impairment of the two-year limitation or the considerations of repose which underlie it.' [Fernandi v.] Strully, supra, 35 N.J. [437] 451 [62 N.J. at 122-123]
Movants' motion for summary judgment on the amended complaint is denied.