260 N.J. Super. 417 (1992)
616 A.2d 1307
SUZANNE SAVAGE, PLAINTIFF-APPELLANT,
v.
OLD BRIDGE-SAYREVILLE MEDICAL GROUP, P.A., PRYSTOWSKI MEDICAL GROUP, AND JOHN DOE, M.D. # 1-4, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1992.
Decided November 18, 1992.
*418 Before Judges DREIER, SKILLMAN and VILLANUEVA.
Frances A. Tomes argued the cause for appellant (Garruto, Galex & Cantor, attorneys; Richard Galex, on the brief).
*419 Richard J. Hull argued the cause for respondent Old Bridge-Sayreville Medical Group (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Mr. Hull, of counsel; Michelle M. Schott and Michael A. Swimmer, on the brief).
Jacqueline F. Bunn argued the cause for respondent Prystowsky Medical Associates, P.A. (McDonough, Korn & Eichhorn, attorneys; Ms. Bunn, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff, Suzanne Savage, appeals from the dismissal of her medical malpractice claims against defendants, Old Bridge-Sayreville Medical Group, P.A. and Prystowsky Medical Group, for prescribing and administering a tetracycline derivative drug to her when plaintiff was a small child. When plaintiff's permanent teeth erupted, it was evident that they were significantly discolored. We know now that this is a typical problem with the administration of certain tetracycline drugs to young children. See Apgar v. Lederle Laboratories, 123 N.J. 450, 452, 588 A.2d 380 (1991); Feldman v. Lederle Laboratories, 97 N.J. 429, 436-437, 479 A.2d 374 (1984).
When plaintiff was still a small child, her mother was told by the child's dentist that some medication the child had been given was the cause of the tooth problem, but the dentist never indicated to the mother that prescribing the medication was improper. In fact, there is no indication that the dentist himself knew that the untoward effect of the medication was known to the medical community at the time it had been prescribed. Even as a child, when plaintiff would ask her mother why she could not have white teeth, her mother would tell her that her teeth were discolored as a result of medication the child had taken as an infant when she was very sick and it had been necessary to give her medication.
Plaintiff's certification shows that in 1988, when plaintiff was twenty-eight years old, her mother told her about a newspaper *420 advertisement regarding discolored teeth. They inquired further, consulted with the attorneys who had placed the ad, and learned for the first time that the medication that caused the discoloration had been tetracycline and that it may have been improper for the physician to have prescribed the drug to small children.
Plaintiff filed her complaint against the two medical groups who had treated her as a child within two years of this discovery. The trial judge, however, granted defendants' motions for summary judgment based upon Apgar v. Lederle Laboratories, supra. The trial judge determined specifically that plaintiff was "armed with the facts that would have enabled her to explore in the legal, scientific or medical community whether or not she had an actionable claim." She further stated that it made no difference that "plaintiff was unaware that it was improper for a pediatrician to prescribe the medication." Consequently, the judge determined that the discovery rule did not apply and that plaintiff's claim was barred by the applicable statute of limitations.
The discovery rule is equitable in origin. Lopez v. Swyer, 62 N.J. 267, 273, 300 A.2d 563 (1973). It "provides that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by the exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Id. at 272, 300 A.2d 563. A cause of action will not accrue unless an injured party knows or has reason to know that he or she has a right of redress. Ibid. Cf. Lynch v. Rubacky, 85 N.J. 65, 70, 424 A.2d 1169 (1981).
The cases under the discovery rule fall into three categories. First is the classic case of a foreign object left in a patient's body, producing no symptoms or insufficient symptoms to warrant further investigation until after the two year period of limitations has expired. See Fernandi v. Strully, 35 N.J. 434, 173 A.2d 277 (1961). See also Graham v. Gielchinsky, 241 *421 N.J. Super. 108, 574 A.2d 496 (App.Div. 1990), aff'd, 126 N.J. 361, 599 A.2d 149 (1991); Fox v. Passaic Gen'l Hosp., 71 N.J. 122, 363 A.2d 341 (1976); Tramutola v. Bartone, 63 N.J. 9, 304 A.2d 197 (1973).
In the second type of case, plaintiff knows the injury has occurred but he or she does not know the cause of the injury. See Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 429-432, 527 A.2d 66 (1987) (plaintiff's headaches were attributed to an earlier car accident and work stress rather than chemical exposure at work). Vispisiano distinguishes Burd v. New Jersey Telephone Co., 76 N.J. 284, 386 A.2d 1310 (1978), in which the plaintiff had actually made the causal connection more than two years prior to commencing suit. See also Graves v. Church & Dwight Co., Inc., 115 N.J. 256, 558 A.2d 463 (1989); Moran v. Napolitano, 71 N.J. 133, 363 A.2d 346 (1976).
In the third type of case, plaintiff knows of the injury and its cause, but has been assured by the responsible party (and others) that the injury occurred without fault. In Lopez, five years after x-ray therapy, the plaintiff, who had been terribly burned as a result of the therapy but had been reassured by her treating doctors, overheard an examining doctor explain to other doctors who were about to examine her that they were about to see "what happens when a radiologist puts a patient on the table and goes out and has a cup of coffee." 62 N.J. at 271, 300 A.2d 563. See also Abboud v. Viscomi, 111 N.J. 56, 543 A.2d 29 (1988); Lynch v. Rubacky, supra, 85 N.J. 65, 424 A.2d 1169; Alfone v. Sarno, 139 N.J. Super. 518, 354 A.2d 654 (App.Div. 1976).
What we have before us is a fourth type of case, apparently not yet considered by our courts in a reported decision, but alluded to in several discussions. Here, plaintiff knew the fact and extent of her injury (the tooth discoloration) and the causative agent (a medication administered during childhood). There apparently were no active efforts on the part *422 of the potential tortfeasors or others to mislead plaintiff or her mother.[1] What may differentiate this case from the others, however, is that without being misled, plaintiff may simply have had no reasonable basis to equate the administration of the tetracycline to the fault or wrongdoing of another. As the Supreme Court explained in Vispisiano v. Ashland Chem. Co., supra:
The "discovery rule" is called into play "when a party is either unaware that he has sustained an injury or, ... although aware that an injury has occurred, he does not know that it is, or may be, attributable to the fault of another * * *." Tevis v. Tevis, 79 N.J. 422, 432 [400 A.2d 1189] (1979). One's awareness of an injury or deleterious condition does not always equate with the accrual of a cause of action. At times, as in this case, "the inquiry must focus upon fault as well as injury where the awareness of the fault is not self-evident in the injury." Jarusewicz v. Johns-Manville Prods. Corp., supra, 188 N.J. Super. [638] at 643 [458 A.2d 156 (1983)] (citing Lynch v. Rubacky, supra, 85 N.J. [65] at 72-73 & n. 1 [424 A.2d 1169])....
[107 N.J. at 427, 527 A.2d 66].
Vispisiano involved a toxic tort injury where the plaintiff's knowledge of the source of the injury was in question. There, the court underlined the fact that causation by the fault of a third party really raises two separate problems. In such a case the issues underlying plaintiff's awareness are whether "at the time of a toxic tort injury ... the cause was (a) the fault of (b) a third party." Id. at 434, 527 A.2d 66. Thus the Supreme Court recognized that there must be both causation in fact by another and an element of fault. See also Abboud v. Viscomi, 111 N.J. at 62, 543 A.2d 29; Tevis v. Tevis, 79 N.J. at 432, 400 A.2d 1189. In the case before us, plaintiff was aware of causation in fact, but she was allegedly unaware that there may have been fault.
The trial judge felt she was bound by Apgar v. Lederle Laboratories. There the Supreme Court determined that the plaintiff knew that the discoloration of her teeth was caused by *423 medication taken as a child because her dentist had told her while she was still in junior high school that the medicine had caused the discoloration. She also visited a clinic where she was informed that the damage caused by the medication was permanent. Furthermore, while she was still in high school she had formed a belief that the medication had not been thoroughly tested and something was not right. 123 N.J. at 452-453, 588 A.2d 380. The Apgar plaintiff claimed that it was not until years later when she read about a successful litigant in a tetracycline case and consulted an attorney who conducted discovery, that she knew the actual products involved and the manufacturers of those products. She therefore claimed she should have the benefit of the discovery rule. The Supreme Court disagreed because it was clear that plaintiff could have filed complaints naming John Doe defendants. Id. at 456, 588 A.2d 380. In reaching its decision, the Apgar Court did not reiterate the "fault" element which it had discussed in earlier cases but merely stated that Ms. Apgar was "aware of a `state of facts which may equate in law with a cause of action.'" Id. at 455, 588 A.2d 380 (quoting Burd, 76 N.J. at 291, 386 A.2d 1310). The Court, however, made this statement within the context of a case where the plaintiff knew or had strong suspicion for many years that the manufacturers of the drug had been at fault. Apgar is thus readily distinguishable from the case before us.
This is not to say that a plaintiff must have been told that the action was tortious, or that a plaintiff must have had legal advice before a cause of action accrues. Burd v. New Jersey Telephone Co., 76 N.J. at 291, 386 A.2d 1310. Nor need a plaintiff know the actual identity of those responsible for the injury, since a "John Doe" complaint could be filed. Apgar v. Lederle Laboratories, 123 N.J. at 456, 588 A.2d 380; Viviano v. CBS, Inc., 101 N.J. 538, 554, 503 A.2d 296 (1986). It is possible that apart from these considerations there may have been no reasonable basis for an appreciation of the requisite fault. In the case before us plaintiff might reasonably have *424 thought that the tooth discoloration was an unavoidable side effect of a drug necessary to cure her childhood illnesses. In that event, she neither would have known nor should have known that she might have been injured through defendants' fault. This determination should not have been made on defendant's motion for summary judgment.
In Abboud v. Viscomi, supra, the Court stated that the discovery doctrine "`postpon[es] the accrual of a cause of action' so long as a party reasonably is unaware either that he has been injured, or that the injury is due to the fault or neglect of an identifiable individual or entity. [Vispisiano 107 N.J.] at 426-427 [527 A.2d 66]; accord Lynch v. Rubacky, 85 N.J. 65, 70 [424 A.2d 1169] (1981); Lopez v. Swyer, supra, 62 N.J. at 274 [300 A.2d 563]." 111 N.J. at 62-63, 543 A.2d 29. In Abboud, the plaintiff was aware of some injuries and suspected that the defendant had been at fault. The Court accepted this proposition that "plaintiff actually or constructively knew her injury was due to another's fault or neglect," id. at 63, 543 A.2d 29, but acknowledged that defendant's reassurances may have caused plaintiff to delay instituting suit. The Court disagreed with the conclusion that such "findings precluded consideration of the relationship, if any, between defendant's representations and plaintiff's delay in commencing this action." Ibid. Quoting Lopez and Vispisiano, the Court stated,
"The discovery rule is essentially a rule of equity,"... and therefore, "each case calls for an identification, evaluation and weighing of the equitable claims of the parties." [Citations omitted]. To be sure, "[i]t is not every belated discovery that will justify an application of the rule lifting the bar of the limitations statute. The interplay of the conflicting interests of the competing parties must also be considered." [Citation omitted]. Hence the decision on when a claim accrued clearly requires "more than [] simple factual determination[s]."
[Id. at 63-64, 543 A.2d 29].
In the case before us, we must consider the following factors: plaintiff's apparent lack of knowledge that the ingestion of tetracycline by her as a young child may have been the result of the fault of another; the matter-of-fact statement by one of plaintiff's pediatric dentists to plaintiff's mother that the drug *425 causes discoloration, without any indication that alternatives might have been available or that there were any contraindications; and finally, plaintiff's apparent acceptance of the fact that she had suffered no actionable harm even though she was painfully aware of her discolored teeth.
Defendants have indicated that for the purpose of these motions they have not disputed plaintiff's factual allegations, but they have argued that the facts alleged by plaintiff prevent the application of the discovery rule. A Lopez hearing requires a broad analysis of the fairness of barring a claim, that is, if it was not and could not reasonably have been appreciated by the plaintiff. The issue before the trial court was whether plaintiff "is equitably entitled to the benefit of the discovery rule." Lopez v. Swyer, 62 N.J. at 275, 300 A.2d 563. Such a matter may be determined on affidavits, certifications or depositions where credibility is not involved but "[g]enerally the issue will not be resolved on affidavits or depositions since demeanor may be an important factor where credibility is significant." Ibid.
The hearing requires more than mechanistic satisfaction of specific criteria. As we noted earlier, the discovery rule is itself an equitable doctrine, and therefore there must be a balancing of plaintiff's rights against those of a potential defendant. The time period to be overcome may be so attenuated that the difference between the suit having been brought within two years of plaintiff attaining her majority, or on the date the suit was actually instituted, materially prejudices the potential defendants. In such a case equity might not permit the statute of limitations to be tolled, and the trial judge, after appropriate fact-finding, may refuse to apply the doctrine.
The Lopez motion is not a motion for summary judgment. The court thus cannot expect a plaintiff to be prepared, before discovery has been concluded, to meet all defenses. A defendant, however, may still come forward and show the court that there is such little likelihood of plaintiff's success that equity should not permit defendant to be put through the time *426 and expense of a trial. While such proofs may be unusual at a Lopez hearing, the court should not cast a blind eye to the realities of the situation before it. The trial judge must apply an objective standard and determine whether a reasonable person in plaintiff's position should have known that the drugs given to her as a young child may have injured her through the fault of another, and that she thus should have sought appropriate professional assistance.
The order appealed from is reversed, and we remand this matter for a Lopez hearing.
NOTES
[1] This latter factor, however, may be subject to some question if the comments to plaintiff's mother by the dentist are taken to imply that the tooth discoloration was an unfortunate side effect of necessary medication for which there was no reasonable alternative.