633 A.2d 514

SUZANNE SAVAGE (NEE SAMUEL), PLAINTIFF–RESPONDENT, v. OLD BRIDGE–SAYREVILLE MEDICAL GROUP, P.A., AND PRYSTOWSKY MEDICAL GROUP, DEFENDANTS–APPELLANTS, AND JOHN DOE, M.D., #1–4, (JOHN DOE BEING FICTITIOUS AS TRUE IDENTITY IS UNKNOWN), DEFENDANTS.

Argued September 27, 1993—Decided November 24, 1993.

*Richard J. Hull* argued the cause for appellant Old Bridge–Sayreville Medical Group, P.A. (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys; *Michael A. Swimmer* and *Michelle M. Schott,* on the brief).

*William S. Mezzomo* argued the cause for appellant Prystowsky Medical Group (*McDonough, Korn & Eichhorn,* attorneys; *Jacqueline F. Bunn,* of counsel and on the brief).

*Richard Galex* argued the cause for respondent (*Garruto, Galex and Cantor,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

This appeal presents a difficult exercise in application of the discovery rule. The case arises, as have several recent cases, from an experience of tooth discoloration due to medical treatment with tetracycline antibiotics in early childhood.

The history and principles underlying the discovery rule have been examined by us on numerous occasions, see, *e.g., Vispisiano v. Ashland Chemical Co.,* 107 *N.J.* 416, 527 *A.*2d 66 (1987), and need no further elaboration here.

> Suffice it to say that the rule's "essential purpose * * * is to avoid harsh results that otherwise would flow from mechanical application of a statute of limitations." [*Vispisiano, supra,* 107 *N.J.*] at 426 [527 *A.*2d 66]. Accordingly, the doctrine "postpon[es] the accrual of a cause of action" so long as a party reasonably is unaware either that he has been injured, or that the injury is due to the fault or neglect of an identifiable individual or entity. *Id.* at 426–27 [527 *A.*2d 66]; *accord Lynch v. Rubacky,* 85 *N.J.* 65, 70 [424 *A.*2d 1169] (1981); *Lopez v. Swyer,* [62 *N.J.* 267, 274, 300 *A.*2d 563 (1973) ]. Once a person knows or has reason to know of this information, his or her claim has accrued since, at that point, he or she is actually or constructively aware "of that state of facts which may equate in law with a cause of action." *Burd v. New Jersey Tel. Co.,* 76 *N.J.* 284, 291, 386 *A.*2d 1310 (1978).
>
> [*Abboud v. Viscomi,* 111 *N.J.* 56, 62–63, 543 *A.*2d 29 (1988).]

Plaintiff was born in 1961. Because her status as a minor tolled the running of the statute of limitations until she was twenty-one, the question in her appeal is whether a hearing is required to determine if plaintiff was "reasonably unaware" before her twenty-third birthday that she had suffered the injury due to the fault

or neglect of an identifiable individual or entity.[1]  She filed her complaint in 1989, alleging that she was unaware until 1988 that her injury was due to the fault of another.  The trial court believed that no hearing on her claim of unawareness was required.  It ruled:

> Here the plaintiff was aware of her injury, namely the tooth discoloration, during her childhood, and she was aware of that when she reached the age of maturity. She was also aware that the medication given to her as a child may have caused the discoloration.  That is, she was aware of the likely cause of her injury.  Thus at the time she reached the age of maturity, she was aware of the state of facts from which she could reasonably learn if they equated in law with a cause of action.

The Appellate Division reversed, 260 *N.J.Super.* 417, 616 *A.*2d 1307 (1992), reasoning that although plaintiff was indeed aware of the fact that she had suffered injury and that medication was a likely cause of the injury, the record did not demonstrate that she was reasonably aware that the injury was due to any fault in the medication or the care given.  The Appellate Division distinguished our holding in *Apgar v. Lederle Laboratories,* 123 *N.J.* 450, 588 *A.*2d 380 (1991), which held time-barred the claim by one who knew by the time that she reached her twenty-first birthday that her teeth had been discolored and, based on information from several dentists, that medication she had taken as a child had produced the staining.  In that case, however, before the plaintiff was eighteen years old, she was under the belief that the medication "had not been thoroughly tested," and was under the further assumption that " 'something [was] not right.' "  *Id.* at 453, 588 *A.*2d 380.  The plaintiff's theory in *Apgar* was that although she had reason to believe the defective medication had caused her injury, the statute of limitations did not begin to run on her claim until she learned the identities of the manufacturers of the drugs that she had taken.  We disagreed because the identities of the drug manufacturers were readily ascertainable from the plaintiff's physicians.

---

[1] We have since decided that the statute of limitations on minors' actions, on a prospective basis, commences to run at age eighteen.  *Green v. Auerbach Chevrolet Corp.,* 127 *N.J.* 591, 601, 606 *A.*2d 1093 (1992).

We granted the petitions for certification of Old Bridge–Sayreville Medical Group, P.A., and Prystowsky Medical Group, 133 *N.J.* 433, 627 *A.*2d 1139 (1993), to review their contention that the Appellate Division's ruling represented a new and unwarranted expansion of discovery-rule doctrine.

## I

Plaintiff was among that group of children who, in the 1960s, were treated with tetracycline antibiotics for infectious childhood diseases. She was born on January 27, 1961, shortly after the products were introduced. She suffered from childhood disease that required heavy doses of antibiotics. She recalls that when she was nine or ten years old, her mother told her that discoloration of her teeth may have been the result of taking medicine as a child. Her mother, Marilyn Samuel, recalls such a conversation but not its exact year. Mrs. Samuel recalls that she was informed by one of Suzanne's childhood dentists that the discoloration was most likely due to medication that Suzanne had received as a child. Suzanne readily acknowledges that throughout her teens and into her twenties she understood the correlation between the discoloration of her teeth and her childhood medications. She says, however, that it was not until her mother read a 1988 advertisement concerning legal actions for such tetracycline staining that she was aware that she had a claim.

## II

In *Feldman v. Lederle Laboratories,* 132 *N.J.* 339, 625 *A.*2d 1066 (1993), we recently reviewed the regulatory history of the introduction and marketing of the tetracycline antibiotics. As early as 1963, with the possible exception of Declomycin, the Food and Drug Administration (FDA) had recommended a suggested statement, to be incorporated in the printed matter that accompanies tetracycline products, cautioning that certain use during early tooth development may cause discoloration of teeth. Sometime after 1964, the *Physicians' Desk Reference (PDR )* contained a

warning that administration even of Declomycin during the developmental stages of permanent teeth could cause permanent discoloration. In the case of therapeutic products that protect or prolong life, most often the absence or inadequacy of warning is what makes the product defective.

This case differs from *Apgar, supra,* in that plaintiff asserts that the medicine was prescribed between 1961 and 1971, long after the *PDR* contained a warning that unwarranted use of the tetracyclines could cause permanent tooth discoloration.

As noted, during her early childhood years, Suzanne Savage began noticing that her teeth were discolored. Her mother told her that her condition was due to the medicine she had taken as a child. Can one reasonably assume that Suzanne would have been, as a child, aware of either a defect in the tetracycline products or of a lack of due diligence among the physicians who had treated her? At what later point in her maturing would it have been reasonable to believe that she should have been aware of a defect in the product or the treatment? It was not until 1975 that Dr. Feldman, the physician who prescribed Declomycin for his own daughter, is described as having "questioned [Lederle Laboratories'] medical representative regarding dental discoloration related to the use of tetracycline." *Feldman v. Lederle Lab.,* 97 *N.J.* 429, 440, 479 *A.*2d 374 (1984) (*Feldman I* ).

### III

Defining when a cause of action accrues does not yield to a neat analysis. Yet, the doctrine has a core meaning:

> As stated in *Lynch v. Rubacky,* 85 *N.J.* 65, 70 [424 *A.*2d 1169] (1981), "the discovery rule centers upon an injured party's knowledge concerning the origin and existence of his injuries as related to the conduct of another person." This knowledge contemplates knowledge of injury and knowledge of fault.
>
> [*Torcon, Inc. v. Alexian Bros. Hosp.,* 205 *N.J.Super.* 428, 435, 501 *A.*2d 182 · (Ch.Div.1985).]

Our cases have regularly emphasized the same two threads of knowledge of injury and knowledge of fault. The seminal case of *Lopez v. Swyer,* 62 *N.J.* 267, 300 *A.*2d 563 (1973), defined the issue

in terms of when the plaintiff " 'knew or should reasonably have known the nature of Maria's illness and its causal relationship with the alleged negligence.' " *Id.* at 272, 300 *A*.2d 563 (quoting *Lopez v. Swyer*, 115 *N.J.Super.* 237, 252, 279 *A*.2d 116 (App.Div.1971)). *Tevis v. Tevis*, 79 *N.J.* 422, 432, 400 *A*.2d 1189 (1979), states that "when a party is either unaware that he has sustained an injury or, although aware that an injury has occurred, he does not know that it is, or may be, attributable to the fault of another, the cause of action does not accrue until the discovery of the injury or *facts suggesting the fault of another person.*" (Emphasis added).

*Burd v. New Jersey Telephone Co.*, 76 *N.J.* 284, 291, 386 *A*.2d 1310 (1978), emphasized that a third-party action for a workplace exposure to noxious fumes accrues when a "plaintiff learns, or reasonably should learn, the existence of that *state of facts* which may equate in law with a cause of action," because the trial court had ruled that the plaintiff had to be informed *by an attorney* that he had a cause of action before the statute would commence to run.

In *Lynch v. Rubacky*, 85 *N.J.* 65, 424 *A*.2d 1169 (1981), a patient belatedly learned that the persistent pain in her ankle was due to a physician's fault, not the natural process of healing. In ruling that her claim was not time-barred, the Court explained:

> The *Burd* case is not to be viewed as a retreat from *Lopez v. Swyer, supra,* in the sense of either minimizing or rejecting knowledge of fault as a necessary component of a factual basis for a claim against another. The *Burd* decision fully embraces *Lopez,* as well as the medical malpractice decisions cited therein, which have contributed to the evolution of the discovery rule and have consistently considered knowledge of fault as well as injury to be requisite for the accrual of a cause of action.
>
> In many cases, knowledge of fault is acquired simultaneously with knowledge of injury. * * *
>
> On the other hand, there are medical malpractice cases where fault is not implicit in injury.

> [*Id.* at 71, 424 *A*.2d 1169.]

In discussing the role of the *Lopez* hearing in such a case, the Court wrote: "To the extent that fault is · not self-evident or

obviously revealed by the injury itself, the judicial search into an aggrieved party's knowledge of possible fault must be * * * exacting." *Id.* at 74, 424 *A.*2d 1169.

In *Vispisiano, supra,* 107 *N.J.* 416, 527 *A.*2d 66, a toxic-tort case, a worker exposed to chemicals at a plant did not immediately connect the exposure to his symptoms. The Court wrote: "At times, as in this case, 'the inquiry must focus upon fault as well as injury where the awareness of the fault is not self-evident in the injury.'" *Id.* at 427, 627 *A.*2d 1139 (quoting *Jarusewicz v. Johns-Manville Prods. Corp.,* 188 *N.J.Super.* 638, 643, 458 *A.*2d 156 (Law Div.1983)).

■ "Fault" in the context of the discovery rule is simply that it is possible—not provable or even probable—that a third person's conduct that caused the injury was itself unreasonable or lacking in due care. In other words, knowledge of fault does not mean knowledge of a basis for legal liability or a provable cause of action; knowledge of fault denotes only facts suggesting the *possibility* of wrongdoing. Thus, knowledge of fault for purposes of the discovery rule has a circumscribed meaning: it requires only the awareness of facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct *may* have caused or contributed to the cause of the injury and that conduct itself might possibly have been unreasonable or lacking in due care.

## IV

The purpose of statutes of limitations is "to 'stimulate to activity and punish negligence' and 'promote repose by giving security and stability to human affairs.'" *O'Keeffe v. Snyder,* 83 *N.J.* 478, 491, 416 *A.*2d 862 (1980) (quoting *Wood v. Carpenter,* 101 *U.S.* 135, 139, 25 *L.Ed.* 807, 808 (1879)). The question to be resolved on the remand hearing is whether Suzanne Savage was negligent in not becoming earlier aware of fault in the administration of the medicines.

Generally the issue will not be resolved on affidavits or depositions since demeanor may be an important factor where credibility is significant. Where credibility is not involved, affidavits, with or without depositions, may suffice; it is for the trial judge to decide.

[*Lopez, supra,* 62 *N.J.* at 275, 300 *A.*2d 563.]

In this case, the Appellate Division believed that the trial court reasoned that once plaintiff was aware of an injury and once plaintiff was aware of cause in fact, then plaintiff should have been charged as a matter of law with constructive knowledge of fault in the administration of the medication. We agree with the Appellate Division that the premises of that equation (knowledge of injury plus knowledge of cause equals knowledge of fault) do not logically or necessarily produce its conclusion.

Somewhat like Isabel Lynch, *Lynch, supra,* 85 *N.J.* 65, 424 *A.*2d 1169, Suzanne Savage had never been told by her physicians that the discoloration was not the norm or due to some neglect and therefore she may not have attributed the injury to the fault, that is, the possible wrongdoing, of another. The question then is whether she was unaware of the possibility that another's conduct might have *unreasonably* caused her condition. This case, too, differs from *Apgar, supra,* 123 *N.J.* 450, 588 *A.*2d 380, in that the issue is not whether plaintiff should be deemed constructively aware that a defect in the product caused her condition, but rather whether she should have been aware of the possibility that a lack of care in administering the medication had caused her condition. In this sense, her case is very close to that of the plaintiff in *Lopez, supra,* 62 *N.J.* 267, 300 *A.*2d 563. Maria Lopez knew that she had suffered an injury, burned skin, and that radiation treatments had caused the burning. What she did not know was that her injuries might have been avoidable had not the provider gone out for a cup of coffee while administering the dosage of radiation. *Id.* at 271, 300 *A.*2d 563. Ms. Lopez thus knew of her injury and knew of the cause, but she did not know that avoidable fault in administering the radiation had caused her injury.

The question that the Appellate Division has remanded for resolution is whether Suzanne Savage was reasonably unaware

until 1988 that fault on the part of her physicians had caused her injury. Although the Appellate Division characterized this appeal as presenting a type of case "not yet considered by our courts," 260 *N.J.Super.* at 421, 616 *A.*2d 1307, it is more an application of *Lopez* and its progeny to the particular factual circumstances. The specific inquiry under those precedents is when Suzanne Savage was aware of or should have been aware of the facts that would suggest to a reasonable person exercising ordinary diligence that the conduct of a third party may have caused her injurious condition and that the conduct was possibly lacking in due care.

A remand to explore this threshold issue may ultimately fore-close this lawsuit. For example, the public accounts of tetracy-cline litigation in 1984, *Feldman I, supra*, 97 *N.J.* 429, 479 *A.*2d 374, recounted the dissemination of public information concerning the defects of tetracycline, and the trial court here could consider those circumstances to determine whether a reasonable person exercising ordinary diligence should have been aware of the possibility that the treating physicians acted with a lack of due care. Expressed another way, the trial court could consider whether Suzanne Savage possessed facts that would have led a reasonable person exercising ordinary diligence to believe that the medical product she had been given as a child was defective and that her dentists were possibly neglectful in the treatment provid-ed to her. Against this understanding of the concept of "knowl-edge of fault," the Appellate Division's statement of the issue is sound, namely:

> The trial judge must apply an objective standard and determine whether a reasonable person in plaintiff's position should have known that the drugs given to her as a young child may have injured her through the fault of another, and that she thus should have sought appropriate professional assistance.

[260 *N.J.Super.* at 426, 616 *A.*2d 1307.]

The judgment of the Appellate Division is affirmed.

CLIFFORD, J., dissenting.

First the Court zigs, see *Apgar v. Lederle Laboratories*, 123 *N.J.* 450, 588 *A.*2d 380 (1991), then, in today's case, it zags by

following the Appellate Division's "new" law. The court below, unable to fit the facts into the "discovery" rule, decided to create its own extension of the rule, acknowledging that its new creation had never before been "considered by our courts in a reported decision." *Savage v. Old Bridge–Sayreville Medical Group*, 260 *N.J.Super.* 417, 421, 616 *A.*2d 1307 (1992). The Appellate Division's new category of "discovery-rule" case, which this Court now adopts, is one in which a plaintiff knows of the injury (here, tooth discoloration) and the cause-in-fact thereof (here, medication that had been administered during childhood); and even though the defendant had not misled the plaintiff, nevertheless the plaintiff may simply have had no reasonable basis to link the administration of tetracycline to the *actionable* fault or wrongdoing of another. So, says the court, the statute of limitations does not begin to run until a plaintiff makes, or reasonably should make, that link.

Not only is that rule new, it resurrects a notion that I thought we had long since buried, namely, the requirement that a plaintiff discover *actionable* fault before the statute of limitations begins to run. Fifteen years ago, in a case that has remained good law until today, this Court said:

> The statute of limitations necessarily imputes conclusively to a claimant knowledge that the law affords or may afford a cause of action on the basis of those facts of injury and causal relationship which in law do evoke a cause of action. * * * The discovery principle modifies the conventional limitations rule only to the extent of postponing the commencement of accrual of the cause of action until plaintiff learns, or reasonably should learn, the existence of that *state of facts* which may equate in law with a cause of action. *There is no suggestion in any of the leading cases in this area that accrual of the cause of action is postponed until plaintiff learns or should learn the state of the law positing a right of recovery upon the facts already known to or reasonably knowable by the plaintiff.*
>
> [*Burd v. New Jersey Tel. Co.*, 76 *N.J.* 284, 291–92, 386 *A.*2d 1310 (1978) (second emphasis added).]

Here, as did the plaintiff in *Apgar*, plaintiff knew early on that her tooth discoloration had been caused by one of the many medications she had taken as a child, but not until 1988 (she had turned twenty-one in 1982) did she learn that the damaging drug was tetracycline and that her doctors may have acted improperly

in prescribing it. Ms. Savage started this suit when she was twenty-eight years old, within two years of having discovered the causal relationship between the *improper* prescribing of tetracycline and her condition. However, on defendant's motions for summary judgment, the trial court declined to give plaintiff the benefit of the discovery rule inasmuch as plaintiff had, for many years, been aware of facts that suggested that she should investigate whether she had an actionable claim. The court said that no *Lopez* hearing was necessary because the critical facts, taken from the deposition testimony of plaintiff and her mother, were not in dispute. This Court, guaranteeing that we will be faced with at least one, probably two, and possibly three additional court events, sends the case back for a trial court to decide whether plaintiff "was reasonably unaware until 1988 that fault on the part of her physicians had caused her injury." *Ante* at 249–50, 633 A.2d at 519.

Who will volunteer to explain this result to Kelly Ann Apgar? Relying on *Burd, supra,* 76 *N.J.* 284, 386 A.2d 1310, a unanimous Court decided, in March 1991, that in Ms. Apgar's case the trial court should have entered summary judgment for defendants. Here is the heart of our ruling:

> In this case Ms. Apgar knew by the time she reached her twenty-first birthday that her teeth had been discolored and, based on information from several dentists, that medication she had taken as a child had produced the staining. No one gave her a contrary opinion. Her own belief was that the medicine she had ingested as a child had caused the condition. She was therefore aware of a "state of facts which may equate in law with a cause of action." *Burd, supra,* 76 *N.J.* at 291, 386 A.2d 1310 (emphasis deleted). On that view of the case the statute of limitations expired on August 19, 1984, two years after plaintiff's twenty-first birthday. Inasmuch as she did not start suit until March 22, 1988, her claim is time-barred.

[123 *N.J.* at 455, 588 A.2d 380.]

I would reverse the judgment of the Appellate Division and reinstate the judgment of the trial court in favor of defendants.

Justices POLLOCK and GARIBALDI join in this opinion.

*For affirmance*—Chief Justice WILENTZ, and Justices HANDLER, O'HERN and STEIN—4.

*For reversal*—Justices CLIFFORD, POLLOCK and GARIBALDI—3.