[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-11128

————————————————

ROWENA K. CROWE,
ROBERT H. CROWE,

Plaintiffs-Appellants,

*versus*

JOHNSON & JOHNSON,
ETHICON, INC.,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:21-cv-00210-TFM-C

_____

Before WILLIAM PRYOR, Chief Judge, and GRANT and KIDD, Circuit Judges.

PER CURIAM:

Rowena Crowe and her husband, Robert Crowe, appeal the summary judgment in favor of Johnson & Johnson and its subsidiary, Ethicon, Inc., and against the Crowes' complaint that the implantation of mesh devices manufactured by Ethicon caused her to suffer injuries. Because the Crowes' claims were untimely, we affirm.

In May 2007, Mrs. Crowe visited her gynecologist, Dr. Robert Brown, and complained of urinary incontinence and pelvic pressure. Dr. Brown recommended surgical implantation of two pelvic mesh devices—a transvaginal tape obturator, or "TVT-O," and a Prolift pelvic floor repair system—to treat stress urinary incontinence and pelvic organ prolapse. In July 2007, Dr. Angela McCool performed the surgery to implant the pelvic mesh devices manufactured by Ethicon.

By 2010, Mrs. Crowe began experiencing "[h]orrific pelvic pain, pain during sexual intercourse, infections, back and leg pain[,] and urinary retention." Between 2010 and 2014, Mrs. Crowe visited gynecologists, orthopedic surgeons, physical therapists, and a neurologist to relieve her symptoms. On July 28, 2010, she met with Dr. McCool and reported feeling pelvic pain and "like she [was] having to 'hold' her organs in."

On August 5, 2010, Dr. Brown recorded that Mrs. Crowe reported feeling "pain in the left groin that started a few months ago" and that she "[w]as concerned that the pain was related to anterior prolift/tvto done 7/2007." In her later deposition, she denied making the latter statement. Although Dr. Brown noted that the "left side mesh [was] tighter than [the] right side" and that he would "consider releasing [the] mesh on [the] left side," imaging of Mrs. Crowe's spine confirmed his primary suspicion that she had a herniated disc.

An orthopedic surgeon treated Mrs. Crowe's herniated disc with epidurals, physical therapy, medication, and, in September 2010, back surgery. But Mrs. Crowe returned to Dr. Brown on December 14, 2010, with complaints of pelvic pain that was "progressively worsening." They considered the "possible release of mesh from [the] left side as previously discussed" if her situation did not improve. During a visit on January 5, 2011, Dr. McCool noted that Mrs. Crowe still was experiencing pelvic pain that radiated in her left leg. Mrs. Crowe met with Dr. McCool again a week later and said that she was "worried that something [was] wrong with her [bladder] sling." Mrs. Crowe later testified that she had "[n]o memory of" this January 12, 2011, visit.

On November 9, 2011, Mrs. Crowe told Dr. Brown that she "was not sure if her TVTO could have to do with her vaginal pain, pain in her groin and pain in her stomach" and that she "[w]ould like to know the manufacturer of the mesh." She testified that she brought in "a picture" of a Prolift device for Dr. Brown's review

and asked "if [she] had that in [her]" because she "wanted to be sure that [she] did not have that in [her] body." Dr. Brown testified that he still believed that her pain was related to a herniated disc, but during that appointment he discussed with her "all the possible etiologies of pain," which would include the "TVT-O."

In March 2012, Mrs. Crowe underwent another back surgery. On May 24, 2012, she asked Dr. Brown, "Does the mesh have anything to do with [the] pain and what if [he] release[s] it?" According to a report from that visit, she also stated that her husband "ha[d] been wa[t]ching mesh com[m]ercials." Mrs. Crowe testified that she had no "specific recollection of this visit on May 24[,] 2012," but that she "wouldn't have told Dr. Brown that because my husband didn't watch mesh commercials." Although Dr. Brown testified that he did not believe that her pain was related to the mesh devices, he thought that it was a possibility on his "differential diagnosis" so he "relay[ed] [that information] to her." He wrote that he would wait to see if her back surgery alleviated her pain before releasing the mesh, as releasing it might cause her more pain.

On July 24, 2012, Dr. Brown reported that he was considering releasing the left arm of the Prolift mesh. He testified that, during that visit, he "did" convey to Mrs. Crowe that it was possible that the mesh was causing her pain. On October 8, 2012, while performing a hysterectomy on Mrs. Crowe, he cut one of the arms of the Prolift mesh at her request. Dr. Brown's report stated, "[T]he patient wished to proceed with . . . release of the arm of the left

anterior Prolift" even though he was "not sure that this is the etiology of her pain." He testified that he performed the Prolift revision procedure "[s]pecifically because she [was] concerned that that may be [the] source of her pain. So at least psychologically she thinks that may be the cause of her pain."

After Mrs. Crowe felt the same pain following another back surgery in August 2014, a different doctor suspected that her pain might be related to her pelvis instead of her spine and referred her to Dr. Niall Galloway. After examining Mrs. Crowe twice in April 2015, Dr. Galloway discovered "significant point tenderness along several portions of her mesh" and recommended removing the mesh devices. On June 1, 2015, Dr. Galloway surgically dissected the "TVT-O" mesh and removed the Prolift mesh. Later that month, the Crowes sought counsel.

On August 20, 2015, the Crowes filed suit in the District of New Jersey, and the Judicial Panel on Multidistrict Litigation later transferred the action to the Southern District of West Virginia for pretrial proceedings. After the action was remanded to the District of New Jersey, Johnson & Johnson successfully moved to transfer the action, *see* 28 U.S.C. § 1404(a), to the Southern District of Alabama, where the Crowes resided.

Johnson & Johnson moved for summary judgment and argued that the Crowes' complaint was untimely under Alabama's two-year statute of limitations for personal-injury claims, ALA. CODE §§ 6-2-30(a), -38(*l*). It contended that Alabama law provides that a claim accrues when an injury is manifestly present instead of

when the plaintiff becomes aware of its cause. It asserted that, at the latest, the Crowes' claims accrued in October 2012 when Mrs. Crowe had surgery to release the Prolift mesh to treat her manifest injuries.

The Crowes responded that, because the suit was transferred for convenience, 28 U.S.C. § 1404(a), the district court must apply New Jersey choice-of-law rules. Citing *McCarrell v. Hoffmann-LaRoche, Inc.*, the Crowes argued that the New Jersey statute of limitations governed because an actual conflict existed between New Jersey and Alabama law. 153 A.3d 207 (N.J. 2017). They contended that, although both states' laws provided a two-year statute of limitations, only New Jersey recognizes a "discovery rule" under which the limitations period does not begin to run until the injured party discovers, or should have discovered by exercising reasonable diligence, that she might have a basis for a claim for relief. They argued that their claims were timely under this discovery rule because they did not suspect that the pelvic mesh devices could be causing the injuries until Mrs. Crowe met with Dr. Galloway in April 2015.

The district court granted summary judgment in favor of Johnson & Johnson. It determined that no true conflict existed under the New Jersey choice-of-law rules because the Crowes' claims were untimely under both the New Jersey discovery rule and the Alabama manifest-injury rule. Applying the New Jersey discovery rule, it determined that Mrs. Crowe, by an exercise of reasonable diligence and intelligence, should have discovered that she might

have a basis for a claim no later than 2012, when she had the mesh surgically released. And, applying the Alabama manifest-injury rule, it ruled that her claims accrued in 2010 when she reported her injuries to Dr. Brown.

We review *de novo* the summary judgment against the Crowes and view the evidence in the light most favorable to them as the nonmovants. *See Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 943 (11th Cir. 2017). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The Crowes argue that the New Jersey statute of limitations applies and that, under its discovery rule, their complaint is timely. Johnson & Johnson argues that the Alabama statute of limitations applies but that the Crowes' complaint is untimely under the New Jersey discovery rule too, so no actual conflict exists. We agree with Johnson & Johnson.

To resolve a choice-of-law issue, New Jersey courts first determine whether an actual conflict exists between two states' statutes of limitation. *McCarrell*, 153 A.3d at 216; *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008). A "true conflict" is present when "choosing between one or another state's statute of limitations is outcome determinative." *McCarrell*, 153 A.3d at 216, 220 n.9. If no conflict is present, there is no choice-of-law issue to resolve, and the forum state applies its own law. *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 771 (N.J. 2007).

Alabama law requires personal-injury claims to be brought within two years of accrual. ALA. CODE §§ 6-2-30(a), -38(*l*). A cause of action accrues when there has been a manifest, present injury with observable signs or symptoms that are medically identifiable. *Griffin v. Unocal Corp.*, 990 So. 2d 291, 293, 310 (Ala. 2008). The Crowes do not dispute that their complaint is untimely under Alabama law.

Although New Jersey law also requires personal-injury claims to be brought within two years of accrual, N.J. STAT. ANN. § 2A:14-2(a), it applies a "discovery rule" to determine when the cause of action accrued, *see Savage v. Old Bridge-Sayreville Med. Grp., P.A.*, 633 A.2d 514, 517 (N.J. 1993) (citation and internal quotation marks omitted). The discovery rule provides that a cause of action "will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered[,] that he may have a basis for an actionable claim." *Lopez v. Swyer*, 300 A.2d 563, 565 (N.J. 1973).

The district court correctly ruled that no actual conflict of laws exists because applying either statute of limitations results in the same outcome. Applying Alabama law, the Crowes' August 20, 2015, complaint was untimely because Mrs. Crowe's injuries manifested by August 2010 when she reported experiencing pelvic pain and expressed concern that the pain was related to the implantation. *See* ALA. CODE § 6-2-38(*l*). Applying New Jersey law, the Crowes' complaint still was untimely. *See* N.J. STAT. ANN. § 2A:14-2(a). The district court correctly determined that the claims

accrued no later than October 2012 when Mrs. Crowe elected to have part of the mesh surgically released.

The Crowes argue that the district court failed to view the evidence in the light most favorable to them. They contend that a jury could find that Mrs. Crowe acted reasonably by not investigating a potential claim where her doctors advised that her pain was caused by a herniated disc and no one told her until 2015 that the mesh devices were responsible. We disagree.

The Crowes' argument misunderstands New Jersey law. "[K]nowledge of fault for purposes of the discovery rule has a circumscribed meaning" that "requires only the awareness of facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct *may* have caused or contributed to the cause of the injury and that conduct itself might possibly have been unreasonable or lacking in due care." *Savage*, 633 A.2d at 518. It does not have to be "provable or even probable . . . that a third [party]'s conduct that caused the injury was itself unreasonable or lacking in due care"—"the discovery rule is simply that it is possible." *Id.*

In the light of the contemporaneous medical records and Dr. Brown's testimony, the Crowes were aware of the "*possibility*" that defects in the mesh devices "*may* have caused or contributed to" Mrs. Crowe's pelvic pain by October 2012. *Id.* The Supreme Court of New Jersey has explained that the discovery rule "do[es] not insist on medical confirmation as such: a physician's willingness to include [the actual cause] in the differential diagnosis would

probably suffice, as would any other reasonably reliable source of information." *Vispisiano v. Ashland Chem. Co.*, 527 A.2d 66, 77 (N.J. 1987); *see also Lapka v. Porter Hayden Co.*, 745 A.2d 525, 531 (N.J. 2000) (explaining "the distinction between 'some reasonable medical support' and 'medical confirmation,' [and] requiring only the former for purposes of imputing discovery" (citation omitted)). Dr. Brown confirmed in his deposition that "the potential that [Mrs. Crowe's] mesh was causing her pain was at least on [his] differential diagnosis" and that he "relay[ed] [that information] to her." That some doctors, including Dr. Brown, thought that sources other than the mesh devices were the primary cause of Mrs. Crowe's injuries does not mean that the Crowes were unaware that the mesh devices were a possible cause of her pain more than two years before they filed their lawsuit.

The evidence, viewed in the light most favorable to the Crowes, fails to create a genuine dispute of material fact about whether they first discovered a possible connection between Mrs. Crowe's injuries and the mesh devices by August 20, 2013—two years before they filed their lawsuit. Contemporaneous medical records make clear that Mrs. Crowe began connecting the dots between her pain and the mesh devices long before she met with Dr. Galloway. The records state that on August 5, 2010, she told Dr. Brown that she was experiencing pelvic pain and he noted that the "left side mesh [was] tighter than [the] right side." The records state that on January 12, 2011, she told Dr. McCool that she was "worried that something [was] wrong with her sling." The records state that on May 24, 2012, she asked Dr. Brown, "Does the mesh have

anything to do with [the] pain and what if you release it?" And the records state that despite Dr. Brown's uncertainty about the source of her pain and his warning that releasing the mesh could cause additional pain, Mrs. Crowe still allowed him to release the mesh during a surgery on October 8, 2012, because she subjectively believed that her pain might be causally linked to the mesh devices.

Mrs. Crowe's deposition testimony about the medical records does not create a genuine factual dispute. The Crowes argue that "Mrs. Crowe unequivocally testified at her deposition that neither Dr. Brown nor Dr. McCool ever informed her that her pain was caused by the mesh devices or of the possibility that her pain was caused by the mesh devices." But Mrs. Crowe did *not* deny that *she* expressed concern about the possibility. She instead testified that she "d[id]n't recall" "ever expressing concern to Dr. Brown that [she] w[as] worried that something was wrong with [her] sling." And she testified that she "d[id]n't remember asking [Dr. Brown] those questions" at her May 24, 2012, visit. She also testified that she had "[n]o memory of" her January 12, 2011, visit with Dr. McCool. Because Mrs. Crowe could not recall what happened at these visits—where contemporaneous and otherwise undisputed medical records stated that *she* inquired whether the mesh devices could be causing her pain, her general denials about what *her doctors* told her do not create a genuine dispute about that evidence. *See Flournoy v. CML-GA WB, LLC*, 851 F.3d 1335, 1340 (11th Cir. 2017) ("This Court is, of course, obligated to view the facts in the light most favorable to [the nonmovant] and to draw all reasonable inferences in her favor. But the leap between 'I do not

recall' and 'I gave no such instruction' is more than a reasonable inference." (citation omitted)).

In the light of the medical records stating that Mrs. Crowe repeatedly inquired whether the mesh was causing her injuries and insisted on having the mesh removed despite her doctor's uncertainty, the Crowes discovered or should have discovered "facts suggesting the *possibility* of wrongdoing" by October 2012. *Savage*, 633 A.2d at 518. And, because no actual conflict exists between the outcomes of applying either the Alabama or New Jersey rules, we need not resolve the parties' dispute about whether *McCarrell* applies retroactively. *See Rowe*, 917 A.2d at 771.

We **AFFIRM** the summary judgment in favor of Johnson & Johnson and Ethicon, Inc.